PUBLIC SERVICE CORPORATION *et al. v.* WATTS.

(Division B. Oct. 16, 1933. Suggestion of Error Overruled Nov. 13, 1933.)

[150 So. 192. No. 30695.]

236

Luther A. Smith, of Hattiesburg, for appellant Public Service Commission.

240

Stevens & Heidelberg, of Hattiesburg, for appellant, City of Hattiesburg.

Currie & Currie, of Hattiesburg, for appellee.

242

244.

Argued orally by **Luther A. Smith** and **Rowland W. Heidelberg**, for appellant, and by **Dan Currie** and **Neill Currie**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant Public Service Corporation is a distributor of fuel gas, and for that purpose obtained a franchise for the construction and operation of a gas pipe line distribution system in appellant city, the city of Hattiesburg. In that franchise it was provided, among many other things, that "whenever the grantee shall cause any opening or alteration whatever to be made for any purpose, the work shall be completed within a reasonable time, and the grantee shall upon the completion of such work, restore the property disturbed to as good condition as it was before such opening or alteration, subject to the approval of the city engineer."

Bouie street in said city is paved with brick upon a concrete base, and is from eighteen to twenty-four feet wide. In order to lay its pipe lines under and across said street it was necessary at several places for the gas corporation to remove the brick and concrete for a width of about twenty inches and a depth of about two feet, and for a distance of about half way across the street. In November, 1931, such a ditch or trench was made in said street at a point between the intersections of Sixth and Seventh streets. When the pipe was placed therein, and from thence tunnelled across to the opposite side of the street, the ditch or excavation was temporarily filled with sand or gravel; the restoration of the brick and concrete being deferred to a later time. Bouie street is one of the principal streets of the city, and carries a heavy traffic. The result was that the sand and gravel temporarily placed as fillers in the trenches or ditches aforesaid would soon be whipped out, as some of the witnesses expressed it, by the constant passing of automobiles and trucks, and it was necessary to refill the trenches from time to time, and this the gas corporation made some attempts to do.

This situation was allowed to prevail for several months and until after the injury in this case on April

23, 1932. The trench causing the injury, to-wit, the trench between the intersections of Sixth and Seventh streets, had, on said date, become in such condition that it was from eight to ten inches deep along its middle portion, this depth tapering out to about three inches at each end, and was, as above said, about twenty inches wide and extended in length to about the middle of the street, and at said date this condition as to depth had been in existence for a month, or, according to some witnesses, six weeks. The effect of this was that when a car or truck would attempt to cross directly over this trench the wheels would fall therein, and one or more of the witnesses said that some of the wheels would go so far down that only the sharp edges of the brick on each side of the trench would prevent them from going down further. The natural result was that those using this street in the daytime, and those at night who knew of it, would often, if not usually, go around the trench to avoid the danger of injury to machinery and to passengers.

At 8:10 o'clock on the night in question, appellee was traveling on Bouie street going south on a motorcycle at about fifteen to twenty miles an hour. He was accompanied by a passenger in a side seat, attached to the motorcycle on the right side thereof. It was a dark night, and appellee did not know of the location of said trench in the street. The trench was not lighted or otherwise guarded. The light on the motorcycle, and such street lights as there were, did not disclose it to appellee. He was proceeding on his right-hand side of the street and about two or three feet from the curb; and he and all his witnesses say that he did not vary or turn from his right-hand side, and was on that side when the collision, now to be mentioned, occurred.

At the same time an automobile driven by A. A. Smith was traveling north on said street, on his own right-hand side, at about fifteen or eighteen miles an hour. Smith knew of this trench, of its danger to an automobile and

the passengers therein, and of its approximate, although not of its exact, location. When he approached the trench, and just before arriving at that point, he slowed down slightly and swerved or turned to the left to go around the trench, but in attempting to do so he missed his calculation of entirely clearing the trench, his right front and rear wheels fell into the trench, causing him for the moment to lose control of the car, and at the same time caused the car to proceed much further to the left and out of control to a point about twenty-five feet beyond and to the left of the end of the trench where the car collided with appellee's motorcycle, and, becoming entangled with the motorcycle, dragged it for a distance of about thirty feet therefrom to the opposite side of the street. Appellee was seriously injured in the collision, and having brought suit he recovered judgment against both the gas corporation and the city, and from this judgment the defendants appeal.

The above-condensed statement of facts is taken from the testimony given in behalf of plaintiff, and which now, because of the effect of the finding of the jury, must be accepted as true, unless overwhelmingly contradicted, and such is not the case, as a careful examination of the record has disclosed.

The principal argument of appellants is that they should have had the peremptory instruction requested by them. The general proposition upon which this argument is based is the contention that the injury was produced and proximately caused, not by the negligence of the defendants in the matter of the dangerous trench or ditch, but by an intervening, independent, and efficient cause, to-wit, the actions of driver of the northbound automobile. And appellants put this contention in such manner that it may be examined under two heads: First, they say that the action of the driver of the automobile in attempting to go around the trench or ditch, whereby he placed himself on his left-hand side of the street, was the

proximate cause of the injury. This point is not well taken for three reasons, only one of which is necessary here to state. All the authorities agree that when there is an obstruction or pitfall on the right-hand side of the street, the driver of an automobile has the right to drive to his left around the obstruction and to be on the left-hand side of the street temporarily and for the necessary time and distance to enable him to pass the obstruction or pitfall, if in doing so he exercise the proper degree of care as regards others using the street in that immediate vicinity. 3-4 Huddy Automobile Law (9 Ed.), p. 172; 1 Berry Automobiles (6 Ed.), p. 242; 29 C. J., p. 653; 42 C. J., p. 909. There is no dispute that Smith, the automobile driver, was keeping a reasonable lookout, and that when he entered upon the making of the turn he saw appellee about one hundred twenty-five to one hundred fifty feet distant. There was then plenty of time for him to make the turn and get back within his right-hand side before the arrival of the motorcycle, provided the motorcycle was approaching at a reasonable rate of speed, which the automobile driver had the right to anticipate would be the case, and which according to his record was in fact the case. And before turning to the left the automobile driver did not have to wait merely because he saw another vehicle approaching in the distance, if, as said, he had time to make the turn and get back within his own side before the arrival of the other vehicle within the particular space to be occupied in taking the turn. We have recently decided a case involving, in principle, the point stated in the foregoing sentence. See Myers v. Tims, 161 Miss. 872, 138 So. 578.

Second, appellants say that after the automobile driver had entered upon the making of the turn to avoid the trench and had in the attempt fallen therein, his action thereafter in continuing to the left until he struck the motorcycle was then and there that of an intervening, independent, and efficient cause which insulated the injury

from the negligence of the defendants. In stating the principle upon which appellants rely, the courts have used several forms of expression, thereby seeking to make the principle plain when applying it to the particular case in hand. For the same purpose, we shall attempt to state that principle as follows: If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity, as such, when the injury occurs, then the negligence which puts the injurious force in operation is the proximate cause. But when a new and independent force intervenes between the negligence of the defendant and the injury and that new and independent force or power or agency is then and there of sufficient strength or operative force to overcome and substantially supersede the original force or motion, that is to say, if the new and independent force or power is actually an efficient force or power, then the new force becomes the proximate cause, and the original cause, having been superseded, becomes the remote cause. See the review of the authorities in the recent case, Southern Pacific Co. v. Ralston (C. C. A.), 62 F. (2d) 1026.

Four eyewitnesses, two of whom were standing in a yard immediately opposite to the place where the collision occurred, testified that, when the automobile fell into the trench, the effect of that happening was to cause the driver to lose control of the car, and that he did thereby lose control and that the car proceeded out of control and sharply to its left until it collided with the motorcycle, and these witnesses give the facts, which may be termed the mechanics of the occurrence and which justified them in stating that the car went and remained out of the control of the driver. The latter testified that he did not lose control, but that immediately after falling into the trench he turned to his right and that the collision occurred actually on his right-hand side of the street. His

statement in that regard was much discredited, however, by the testimony of three witnesses, to the effect, that on the night of the collision and a short while thereafter at the hospital, this automobile driver stated to those three witnesses that the accident resulted from his losing control of his car. The jury believed, and the said testimony supports them, that the car was by its fall into this trench thrown out of the control of its driver, and that this loss of control continued until the collision on the driver's extreme left-hand side of the street. Such being the case, that which put the car out of control and at the same time caused the car to go sharply into the extreme left of the street, to-wit, the negligent condition of the trench or ditch, was the force or power which caused the injury, for it was still in continuity of operation and progress when the injury occurred, and no new force or power had intervened which was of sufficient strength or operative force to overcome or substantially supersede it.

What we think actually happened when we take the entire record, viewing it, of course, in the light of the verdict, was this: When the car struck this trench it was caused, for the physical reasons which we shall later mention, to suddenly swerve further to the left than the driver had intended, and that this sudden swerve took the automobile entirely over into the left-hand side of the street, during which time and up to which point control had been lost, but that after that moment and at that latter place the driver regained control and thereupon did turn to the right, but too late to be able to clear the space within which the motorcycle had to pass; and that before the clearance could be made, after control was regained, the motorcycle collided with the left front end and left front fender of the automobile, thus reconciling the other facts with the condition of the automobile and motorcycle when the vehicles came to a rest on the opposite side of the street; and to some extent reconciling the testimony of the automobile driver who says he did turn to the right

after he struck the trench. But it is obviously immaterial that he regained control, when that event occurred only after the car, during the time it was out of control, had got so far to the left that the restored control was too late to be effective to get the car out of the way.

Appellants contend also that the peremptory instruction should have been granted because the collision and the consequent injuries complained of were not such as could reasonably have been foreseen as being the natural and probable results of the condition of the trench or ditch. The court submitted that question to the jury in two instructions, one of which is worded as follows: "The court further instructs the jury for the defendants that they are liable in law only for such consequences of the negligence complained of in this case as could have been foreseen as being the natural and probable results of such negligence; and if you believe that the collision between the motorcycle and automobile in which plaintiff was injured was not such an event as might reasonably have been foreseen by defendants, as the natural and probable consequence of its alleged negligence, then you should find for the defendants." This instruction embodies everything which in matter of law appellants contend for in this connection, and unless there is substantially nothing in the evidence and in the fair inferences to be deduced therefrom after the application of sound reason and common knowledge thereto in support of appellee's case on this point, then the peremptory instruction on that point was correctly refused, and the verdict of the jury in response to the quoted instruction given at the request of appellants must be allowed to stand.

The trench or ditch was made by taking out the necessary number of bricks to produce the twenty inches, or thereabout, in the width of the trench. These bricks were removed in regular rows from the curb to the center of the street, leaving at the top of each side of the trench a sharp right-angled edge or rim which extended in a

comparatively smooth and regular line the entire length of the trench, and the concrete base was removed to correspond with the lines of the removal of the brick. We have already mentioned the condition as to the depth, in which the trench was allowed by defendants to remain and the considerable period in which this condition had existed, and the dangers thereby produced. It was but natural, therefore, that drivers of automobiles would go around this trench, as they had a right to do. There was no warning light at this trench to caution automobile drivers at night of its presence or of its exact location. On a dark night such as this was, and of which there are many, it was a thing to be reasonably anticipated by those of reasonable prudence that many of those who knew of the trench would not be able exactly to locate it while driving and in attempting to go around it would miscalculate its precise location and would fall into it in that attempt. It was also for the same reasons a matter to have been reasonably anticipated that many of those so driving, and at night, although they might know of the approximate location of the ditch but not knowing precisely, would suddenly come upon it, without previous realization that they were so near to it, and that they would then turn at once to the left in the attempt to avoid it, and, not being able to do so entirely, would fall into the trench at an angle therewith, and that in such a situation the natural result would be, a result which the forces of nature itself would bring about, that the front right wheel, striking the sharp, smooth rim at the top of the farther side of the trench at an angle, would be turned and would slide along the wall of trench and in the course and direction of the trench, and therefore toward the left side of the street, and that this impetus or impulse, unless the car were traveling at an unusually slow rate of speed, would tend to cast the car into the extreme left side of the street, and inescapably into the path of other vehicles using that side, in a street of heavy traffic, as was this street.

These are some of the things in the said connection which the jury were entitled to consider and upon which it was their duty to deliberate, and at the same time the inquiry involved is typical of those things which should be submitted to the jury, so as to have brought to bear thereon the general experience, practical sense, and common knowledge of all prudent men in the aggregate, represented for the time being on the jury panel. And it is not necessary, in considering this question of foreseeability, adopting a coined word which is now sometimes used, that the wrongdoer could have foreseen the particular injury, or the precise form or the particular manner in which the injury occurred. It is sufficient that the consequence of the negligence was the natural and probable result thereof, although it might not have been specifically contemplated or anticipated. Cumberland Telephone Co. v. Woodham, 99 Miss. 318, 54 So. 890; and see the numerous authorities gathered in the notes 45 C. J., pp. 918-920.

Appellants complain of several of the instructions granted at the request of appellee. Because of the length to which this opinion has already run, we cannot comment in detail on that feature of the case and must be content with saying that all such inaccuracies as are found in those instructions, when taken together with the instructions granted at the request of appellants and read as a whole, as they must be, are rendered harmless and are cured. Every possible phase of this case, which could be turned in any way to the advantage or possible exculpation of appellants, was presented to the jury by liberal instructions granted in appellants' behalf; and in every other respect not one thing that untiring industry and legal skill could do for appellants' defense in this case has been overlooked or in the least neglected.

Finally, it is contended that the verdict is excessive. The amount of it does seem to be unduly large, but that the injuries were of the most serious nature there is no

question. It is a delicate matter for this court to undertake to order a verdict reduced when, as in this case, the plaintiff subjected himself to a personal inspection or examination of his injuries before the jury, and when the defendants have not undertaken to dispute the injuries or the nature or effects thereof by any countervailing evidence. In such a case the grounds for our interference must be most clearly apparent and made particularly strong; and we think appellants have been unable to do that in this case.

Affirmed.