MISSISSIPPI CENT. R. CO. *v.* ALEXANDER.

(Division A. Feb. 12, 1934.)

[152 So. 653. No. 31043.]

622

Hannah & Simrall, of Hattiesburg, and T. Brady, Jr., of Brookhaven, for appellant.

Brady, Dean & Hobbs, of Brookhaven, for appellant.

624

Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **T. W. Brady, Sr.**, and **T. C. Hannah**, for appellant, and by **Neill T. Currie** and **Dan Currie**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is an action in tort in which the appellee recovered a judgment for damages against the appellant for a personal injury. Two suits were instituted; the first against the appellant only, and the second against the appellant and the city of Hattiesburg. The cases were consolidated and tried as one.

The appellant's railroad crosses one of the streets in the city of Hattiesburg. The jury was warranted in finding from the evidence that that portion of the crossing between the rails of the railroad company's tracks was not maintained in the manner required by section 6127, Code 1930; the defect thereunder being that the dirt or gravel between some of the railroad ties on which the rails were laid was two or three inches below the surface of the ties, causing an abrupt drop of several inches by a vehicle after crossing either rail. On the occasion in question, the appellee was riding in an automobile driven by another at a rate of speed estimated to be between thirty and thirty-five miles an hour. When the wheels of the automobile struck the defective portion of the railroad track, the appellee was thrown to the roof of the car and fell with the small of his back across the seat thereof, receiving a severe injury to his spine.

The appellant's principal assignment of error is that the court below erred in refusing its request for a directed verdict. Its contentions in this connection, setting them forth in the order in which they will be considered, are, first, section 6127, Code 1930, has no application to streets within an incorporated municipality. That section is as follows:

''Where a railroad is constructed so as to cross a highway, and it be necessary to raise or lower the highway,

it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed, and to keep such crossings in good order; and it shall be the duty of the company to erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad, and any company which shall fail to comply with these provisions within sixty days from the filing of written notice by the board of supervisors of the county in which said crossing is located, served upon the agent of said railroad company located in said county by the sheriff, as other processes are served, shall forfeit the sum of the cost of construction of said bridge or crossing, to be recovered by action in the name of the county in which the bridge or crossing is situated, upon an itemized bill of costs of said work.''

The word ''highway'' is a generic term for all kinds of public ways over land or water, and, as used in the statute, is, of course, limited to public ways over land, and ''means a way open to the people without distinction for passage and repassage at their pleasure.'' 29 C. J. 364. But the appellant says that the word should be here limited so as to exclude from the meaning thereof streets in a municipality. In support thereof, it says, in substance, that the right to enforce the statute is conferred on the board of supervisors of the county in which the crossing is located, and that by other statutes the governing body of a municipality is given full jurisdiction over its streets and the crossing thereof by railroads. This question was answered adversely to the appellant in Hamline v. So. Ry. Co., 76 Miss. 410, 25 So. 295. The statute there construed was section 3555, Code 1892, which was identical with the statute as it now appears as section 6127, Code 1930, except as to the method by which the supervisors enforced a railroad's compliance therewith. This change in the statute is not such as to affect the construction theretofore put on it, as it related only to mere matters of detail and in no way alters the duty

imposed on railroad companies. The construction there put on the statute has received legislative approval by three successive re-enactments of the statute since that case was decided; consequently, even if we doubted the construction there put on it, we would not feel at liberty to depart therefrom.

But if mistaken in this contention, the appellant says (1) that the board of supervisors of the county only has a right of action thereunder, and, further, that no right of action thereunder accrues to any one until sixty days' notice of the failure of a railroad to comply with the statute has been given it by the board of supervisors. Both of these contentions are here without merit. The statute was passed for the benefit of persons using the highway and imposes a public duty on railroads, for the violation of which any person injured while traveling on the highway may recover. The notice of the defective condition of the highway, required by the statute, relates only to the right of the board of supervisors to sue thereunder, and not to that of private individuals for whose benefit the crossing must at all times be maintained.

When the appellant's roadbed was constructed, it did not cross this street. Afterwards the street was extended by the municipal authorities so as to cross the railroad and connect with another road constructed and maintained by the county outside of the municipal limits, because of which the appellant says the statute does not here apply for the reason that it did not construct its roadbed "so as to cross a highway." The statute is not susceptible of so narrow a construction, and it is of no consequence under it which was first constructed, the railroad or the highway; its purpose being to provide that railroad-highway crossings shall be maintained in such manner as will promote the safety and convenience of the public.

After this railroad was constructed, its roadbed was moved, and when the city decided to extend the street

across the railroad, it obtained the permission of the appellant to use the old roadbed as part of its street. This permission was given by means of a written contract, which provides, among other things, that:

"For said consideration, the undersigned Mississippi Central Railroad Company further grants to the city of Hattiesburg license and permission to construct, operate and maintain across its right of way and spur track to State Teachers College the street which it shall construct, operate and maintain along the parcels of land hereinabove conveyed to said city of Hattiesburg, but said privilege shall be dependent, and shall not be exercised except upon and subject to the following terms and conditions, to-wit:

"(1) Said city of Hattiesburg shall entirely at its own expenses construct and maintain said crossing the entire width of the right of way, to-wit: one hundred feet, including construction and maintenance of public approaches to the tracks of the Mississippi Central Railroad Company, as now or hereafter constructed along said right of way, laying and maintaining all paving, doing all necessary filling, furnishing and laying all culverts, pipes and drains necessary to take care of normal and storm drainage, constructing and maintaining any stock gaps and/or cattle guards now or hereafter required or deemed desirable by the Mississippi Central Railroad Company, with all other things necessary or desirable for such grade crossing.

"If either the city of Hattiesburg or the Mississippi Central Railroad Company shall deem it necessary or desirable to change the grade or alignment of said spur track, such change shall be made by the Mississipp Central Railroad Company but the expense thereof shall be borne and paid by the city of Hattiesburg, within thirty days after submission of itemized statement thereof.

"(2) That, however, work of constructing and maintaining said crossing shall be performed only at such time

as shall be satisfactory to the general manager or chief engineer of the Railroad Company.

"(3)   That, however, paragraphs (1) and (2) shall not impose upon the city of Hattiesburg, Mississippi, any obligation to maintain the Railroad Company's tracks located upon the above described lands, nor that part of said street between its said tracks, which tracks and which part of said street the Railroad Company shall maintain."

This contract, the appellant says, relieved it of the duty of maintaining the crossing, and imposed the duty so to do upon the city of Hattiesburg. The duty to maintain the crossing is imposed by the statute, and the city was without power to relieve the appellant therefrom; moreover, section 3 of the contract expressly makes it the duty of the appellant to maintain that portion of the "street between its said tracks," meaning, necessarily, that portion of the streets between the rails of the track.

The relative elevation of the street and railroad was such that it was not necessary to either raise or lower the street for the purpose of the crossing; and another contention of the appellant is that the statute applies only when it is "necessary to raise or lower the highway." To raise or lower the highway is only one of the duties imposed by the statute on the railroad company, and is only one of the elements entering into the duty imposed to keep such crossings in good order so that the railroad may be conveniently crossed.

Another of the appellant's contentions is that the evidence discloses no negligence on its part in the maintenance of the track. The argument seems to be that the defect in the crossing was caused by dirt or gravel being washed therefrom; but, if such were the case, the appellant was not relieved thereby unless probably the washing out of the dirt or gravel was caused by an unprecedented flood, the appellant having otherwise exercised due care in the maintenance of the track. The facts present no such question and no opinion is expressed

thereon. Finally in support of its request for a directed verdict, the appellant says that its negligence, if any, in the maintenance of the crossing was not a proximate cause of the appellee's injury. The automobile in which the appellee was riding at the time of his injury was running, as hereinbefore stated, at a speed between thirty and thirty-five miles an hour in violation of a statute or ordinance limiting the speed thereof to twenty miles an hour. The evidence discloses that other automobiles driven at a speed of not more than twenty miles an hour, as the law requires, had safely crossed the track a short time before the appellee was injured, from which it is said by the appellant that the appellee would have suffered no injury had the driver of the automobile exercised the care as to speed required by the statute or ordinance; and, therefore, the negligence of the driver was a new, independent, and intervening cause of the injury, superseding the negligence of the appellant in the maintenance of the crossing, and became the sole proximate cause of the appellee's injury. It may be that had the appellee's automobile been driven with more care, it would have crossed the track without injury to him; nevertheless it required both the negligence of the appellant in the maintenance of the crossing and the negligence of the driver of the automobile to produce that injury. Consequently, both were concurring causes, and each a proximate cause, thereof. Nelson v. Illinois Central R. Co., 98 Miss. 295, 53 So. 619, 31 L. R. A. (N. S.) 689; Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 54 So. 890; 29 C. J. 694; cf., Public Service Corporation v. Watts (Miss.), 150 So. 192.

At the close of the evidence, the court directed a verdict for the city, which the appellant says was not only erroneous, but prejudicial to it. The duty to maintain the crossing in so far as the rights of the public are concerned, was, under the statute, on the appellant, and not the city, and therefore it was under no duty to re-

spond to the appellee for the damages here sustained by him. No error was therefore committed in this connection, even if under section 3404, Code 1930, the appellant could complain error had in fact been committed.

'Over the objection of the appellant a physician who treated, and was continuing to treat, the appellee for his injury was permitted to testify as to his condition and to give his opinion as to the extent of his injury. The ground of the objection to the testimony was that the witness did not qualify as a physician. The evidence disclosed his graduation from a medical college, and several years of active practice of his profession. He was duly licensed under the state laws, but removed from one county to another and failed to record his license within the time required by section 6372, Hemingway's 1917 Code (Code 1930, sec. 5854), which provides that such failure shall render the license void. The failure of this physician to record his license, assuming such to be the case, may have affected his right to practice his profession, but has no bearing on his qualifications as an expert therein.

Finally, the appellant says that the verdict, which is for ten thousand dollars, is excessive. Parts of the appellee's spine are either broken or dislocated, and it is necessary for him to wear either a steel brace or straps of adhesive tape to alleviate the pain, which the jury were warranted in believing he continues to suffer, and his injury has permanently disqualified him from labor of any character. The verdict, therefore, cannot be judicially said to be excessive.

Affirmed.