BILLUPS PETROLEUM CO. *v.* ENTREKIN.

In Banc. June 12, 1950.

No. 37529 (46 So. (2d) 781).

White & Morse, Means Johnston, **W. H. Montjoy,** and **M. F. Palmer,** for appellant.

Mitchell & Hill, **J. D. Stennis, Jr.,** and **Carl Marshall,** for appellee.

**Alexander, J.**

Appellee, an employee of appellant, brought suit against the latter for personal injuries suffered when an automobile driven along the highway adjacent to the filling station at which he worked skidded into the station. From a verdict and judgment for $35,000, the company appeals.

We examine first the appellant's assignments of error directed to the refusal of its requested peremptory instruction and to the insufficiency of evidence to sustain the verdict.

The company operates a filling station along the southern side of Highway 90 in the town of Ocean

Springs. Two months prior to the accident it had covered the drivein area with five truckloads of loose, washed gravel. Some of this gravel was knocked or carried by the egress of cars and trucks onto the paved surface of the highway. It was an established practice of the company periodically to sweep or drag the highway and remove these deposits with a device it had fashioned. Plaintiff worked at night and being alone on duty was not called upon to, and did not, undertake this operation. The highway was cleaned about 4 P.M. on the afternoon of the accident which happened about midnight following.

The highway approaching the station from the west end is situated upon a straight section thereof east of a curve which in traveling east turns to the right. One Harrison, driving east about 11:45 P. M. at a speed of 30 to 40 miles per hour, struck a depression in the highway about 75 to 80 feet west of the entrance to the station. This depression—and there are indications that there were more than one—was caused by faulty repair work by the town in filling excavations after laying of pipe.

According to Harrison he hit this depression which did not extend the full width of the highway, and the back end of his car "bounced and slipped to the left, and I cut my wheels to the right to straighten my car back up and before I could straighten it back up I hit the loose gravel on the highway". The gravel was "even with the entrance of" the station area. Further he stated "When I hit the gravel on the highway it turned my wheel hard to the left and my back end switched to the right and went off the pavement and hit the loose gravel in the Billups driveway and went on up and hit this car". The point at which it left the pavement was opposite the west entrance. He stated that this threw his car out of control. On the crucial point of causation he stated: "Before I got my wheels straightened out I hit the loose gravel . . . I felt the steering wheel jerk in my hand

to the left''. At that time his car had ''stopped skidding, my wheels were not straight, my car was about in line''. He skidded sideways into the station striking plaintiff who was at the rear of a car being serviced and at a point about 15 feet from the edge of the pavement pinning him against the customer's car and causing serious personal injuries hereinafter detailed. He was not allowed to express an opinion whether he could have straightened out his car had it not been for the loose gravel. However, in answer to the inquiry, ''What caused you to slide to the right?'' he answered, ''The gravel.'' The same answer was made to the question, ''What was it that caused you, if you know, to skid into the station?'' When he first hit the loose gravel and felt its effect upon his steering wheel he was entirely on the highway. On cross-examination he was asked: ''You don't know if you would have been able to stop if the gravel had not been there?'' and he answered: ''I don't know for sure.''

The car being serviced was variously estimated to have been knocked from 15 to 100 feet eastward and was then stopped by an occupant's application of the brakes. The Harrison car came to rest about 50 to 60 feet east of the point of impact and partially blocking the highway with its left front wheel. It had been raining during the afternoon and was ''misting'' at the time of the accident. The highway is about 21 feet wide and of concrete. The distance from the right or south edge of the pavement was about 21 feet 7 inches from the service pumps although the pavement did not cover the entire width of the right of way.

There was some testimony elicited to show that the surfacing of station areas with washed gravel was a conventional method and there was other testimony to the contrary. A former manager of said station was permitted to state in answer to an inquiry whether such gravel upon the highway was dangerous, ''I figured it was.'' This was elicited in connection with his asserted

practice of sweeping the pavement during the day. The extent of the gravel deposits was estimated to extend from time to time 2 to 3 feet onto the south side of the pavement and to be from 1 to 2 inches thick. There is no conflict that a deposit was present at the time of the accident, although estimates of its longitudinal extent varied from 40 to 150 feet. There was a bit of conflict in the testimony whether the Harrison car began skidding first before it struck gravel, but it is sufficiently clear that the gravel did not extend to the original cause which was the depression in the highway. When it skidded into the station area there were skid marks within the gravel deposits.

The witness Williams, a city police officer, testified that ''when he (Harrison) came back (out of the original skidding) it skidded on the gravel and he was headed back east when he hit the other car''. He was also permitted, over objection, to state that the gravel was of a quantity and quality such as would cause a motorist to lose control and go into a skid out of control. Of this, more later.

Suit was first instituted by plaintiff against appellant and Harrison. The gravamen of this action was the intoxication and negligence of Harrison, his excessive speed, and the wet and slick condition of the highway. Appellant's negligence was charged to his use of gravel upon the station area. After a demurrer had been sustained plaintiff took a non-suit. The present action was against appellant alone and Harrison became plaintiff's chief witness. For reasons no doubt satisfactory to plaintiff the town of Ocean Springs, whose negligence was the original cause of the accident, was not made a party in either cause. The present action for the first time predicates liability upon the gravel upon the highway.

We are now brought to the core of the case. The negligence charged is the defendant's alleged failure to use reasonable care to furnish the plaintiff a reason-

ably safe place of work. First, to eliminate certain factors that are deemed immaterial. It is not in point that the loose gravel was dragged or carried onto the highway by patrons of appellant; compare National Refining Co. v. Batte, 135 Miss. 819, 100 So. 388, 35 A. L. R. 91; or that Harrison or the town of Ocean Springs were negligent; or that the injury followed a unique pattern of accomplishment. The primary inquiry is whether the appellant was negligent in constructing his driveways in the manner indicated, and next of paramount import, was the presence of gravel upon the highway, if the result of a failure of duty to plaintiff, a proximate contributing cause—meaning a substantial factor—of plaintiff's injury?

Had the action been brought against the town of Ocean Springs the chain of causation would find its first link at the depression in the highway. Tracing the successive events would be an interesting and relevant exercise and would have involved a consideration whether the presence of gravel was a concurring or superseding cause. But when we approach the problem from the angle of defendant's responsibility the preceding events are to be examined under the lens of reasonable foreseeability in which the extraordinary character of succeeding events would come into view.

We cross the first bridge on our course of examination by holding that it was for the jury to say whether the use of the loose, washed gravel adjacent to the highway in the light of the proven and known experience with its properties of ready mobility and displacement, amounted to a failure of the defendant to use reasonable care to furnish a reasonably safe place of work. This decided, we approach the next bridge whereon it must be examined whether the manner and eccentric design of events whereby this negligence matured into injury was, or need have been, foreseeable.

Illinois Central Railroad Co. v. Bloodworth et al., 166 Miss. 602, 145 So. 333, 336, is leaned upon heavily by the appellant. Here, too, there was a negligent and reckless automobilist; here, also, a skidding upon the highway, to wit, a bridge. The acquittal of the railroad company was bottomed upon the sole negligence of the driver, and upon the point whether the condition of the highway (bridge) was a substantial factor, this Court said: ''Considering the construction and maintenance of the bridge, with marked segregation of the walkway from the driveway, with accumulations of dirt, whether loose or packed we do not know, we dare say, with rare exception, there was as safe provision for the protection of pedestrians as can be found on any highway or street within the borders of the state.''

▪▪ If the presence of gravel was a causa sine qua non it would be a substantial factor in the ultimate injury. ▪▪ We would not say that foreseeability must include events which are bizarre, or so unique as to be without the contemplation of one reasonably prudent. But here the precedent events, complicated though they were, stemmed from a use of the highway by a passing motorist. Highway 90 is alleged to be a dominant travel artery from far west unto the eastern seaboard. It was clearly within a required anticipation that many cars would pass throughout the day and night. This was the consideration which prompted gestures toward keeping it cleared of gravel. But was it reasonably foreseeable that a motorist would strike a defect in the highway even at reckless speed and in seeking control of his car skid sideways into the station because of such gravel? We do not find that in this case the answer would be determinative. Negligence of another may be foreseeable.

If appellant's conduct threatened some reasonably foreseeable harm to appellee, then it was negligent toward him, and appellant would be liable for any damage proximately resulting to appellee even though the manner in which the damage was made a reality was not

actually and definitely foreseeable. ▮▮ It is no defense that the liability is seen to extend beyond the risk. Prosser, Torts, page 183. The test is not always whether an intervening or activating cause is foreseeable if it be not unforeseeable. ▮▮ An intervening force, to be efficient, must be a superseding force. Public Service Corp. v. Watts, 168 Miss. 235, 150 So. 192; Lynch v. Fisher, La. App., 34 So. (2d) 513. Yet even an intervening cause may be held to be foreseeable. Russell v. Williams, 168 Miss. 181, 150 So. 528, 151 So. 372.

It is rare indeed that such an unusual chain of circumstances could be forged to join cause and effect as was present in United Novelty Co., Inc. v. Daniels, Miss., 42 So. (2d) 395. Here a rat, evicted from a coin-operated machine, sped beneath an open gas burner where its fur, impregnated with gasoline fumes, became ignited. It scurried back to its former refuge thereby igniting the fumes therein. The resultant explosion killed a servant employed in cleaning the machine under these conditions. Here again the initial inquiry was whether reasonable care had been exercised to make the place of work reasonably safe. ▮▮ The original negligence bore fruitage through an unforeseeable diagram of events. The gist of the action was the unreasonable exposure of the servant to a foreseeable risk of some harm. This was enough. Among the supporting citations was Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F. (2d) 193, wherein the defendant allowed explosive gas to form and remain in an oil barge. This presaged some harm and an injury of some sort, and from some cause was likely and foreseeable. The activating agency was a bolt of lightning— a typical symbol of unpredictability. Liability was adjudged.

Where an employer has set the stage for some form of injury to his employee, it is not controlling that anticipated harm followed an unanticipated pattern. Prosser, ubi supra, page 348. It cannot be doubted that there is integrated into our decisions and those of other states

some measure of public policy which makes more readily acceptable doctrines of liability which find their genesis in the consideration that as between a negligent employer and an innocent employee the loss can as a matter of legal principle be more safely placed upon the one at fault. We make this reference not as a practical guide to the determination of the elusive concept of foreseeability but as a guiding spirit of the law which hovers about the courts and directs them to the acceptance of postulates of liability, conformable to an awakened sense of justice.

The array of authorities cited by counsel has been painstakingly examined. They will appear in the reported briefs. We do not extend our opinion by prolonged analysis. We conclude that it was for the jury to say whether the injury would have occurred but for the presence of gravel upon part of the highway. This determinative issue has of course given us much concern. Our own ideas thereon are not controlling unless it is wholly inconsistent with human experience and physical laws. The gravel was washed and when strewn upon an edge of the highway could perhaps deflect the course of the car and thus render inapplicable the circumstances that the original deflection and momentum were still in operation. It need be only a substantial concurrent cause, the causa causans. We cannot substitute our judgment that the car would have skidded into the station had it not struck the gravel.

From the witness Williams, a police officer, was sought to be elicited expert testimony as to the properties of loose gravel on the concrete highway. Although some questions along this line were excluded, on objection, he was asked the following question and gave the following reply:

"Q. You having had the driving experience that you have testified about, I will ask you if the gravel at this area, opposite the exit and entrances to this filling station, which you say extended out three feet onto the highway, the night of the accident, and was some forty feet in

length along the highway, I will ask you whether or not that gravel you saw that night where you found the evidence of the skid marks of the Harrison car, made immediately before the accident, was of a quantity and character that would cause a motorist to lose control of his automoble and go into a skid out of control?

"Defendant objects, because incompetent, irrelevant, and immaterial and conclusion of the witness and invades the province of the jury.

"The objection overruled.

"A.  I answered yes."

██ ██ We think the question improper.  The views of this witness could add nothing to the knowledge of the jury.  He was not an expert.  Although the question did not go to the length of asking whether in the witness' opinion the gravel caused the skid, and related chiefly to a description of the gravel it was error.  We do not reverse for such error since the basis for its incompetence is that it could not have affected prejudicially the knowledge or views of the jury.

We find no reversible error in the instructions.  The plaintiff was allowed five instructions, and the defendant thirteen.  We find the applicable principles of law embodied in the instructions taken as a whole.

The plaintiff was grievously injured.  One leg was broken above and below the knee.  The pelvis was fractured.  There were internal injuries of a serious nature. It is unquestioned that he suffered intensely.  He was under hospital treatment for several months.  The injury to the pelvis has abated.  The attending physicians and other medical witnesses are of the view that as of the date of the trial there has been a satisfactory union and healing of the bones of the leg with one exception.  He suffers from sleeplessness and is unable to work full-time because of his inability to stand for long periods upon his feet without their swelling.  This is interpreted by the doctors to be due to injury to blood vessels and the circulatory tract and it was indicated that a persistence

of this condition was disabling and bespoke incomplete recovery. No one testified that the injuries would be permanent. Plaintiff was a young man 23 years of age, married, and with a family of two children, expecting another shortly. He suffered injuries to the head and bladder as well as to its outlets, but it is far from clear that these injuries still persist.

Suit was for $75,000. Whether the jury accepted this optimistic demand as a basis which they reduced by one-half; whether the status of plaintiff as a war veteran with a family to support and with his earnings greatly reduced, we do not know, nor do we contemplate. It was a case wherein an innocent employee was cruelly and painfully injured. His hospital bills were large. There are doctors' bills presented totaling $450. We must not, by looking with unabashed sympathy upon a plaintiff, put out of focus the defendant. Recovery in tort is compensatory only save in cases of wilful wrong. Whatever the verdict means to one it means to the other insofar as its amount is concerned.

After prolonged deliberations, a majority of the Court reach the conclusion that the verdict is excessive and evinces passion and prejudice. We feel that it is a sufficient concession to plaintiff to allow a verdict of $20,000 to stand. This figure gives due consideration to the fact that the jury fixed the substantial sum of $35,000, and the matter of proportion is thus retained as a factor.

The cause will be affirmed if within fifteen days from this date the appellee will enter a remittitur of $15,000. Otherwise, the cause will be reversed and remanded upon the sole issue of damages.

Affirmed with remittitur.

**Roberds, J.** (dissenting).

In my opinion, the peremptory instruction requested by defendant should have been given. I can see no

liability on the part of appellant under the facts of this case. Liability is grounded solely on the failure of defendant to use reasonable diligence to furnish plaintiff, as its servant, a reasonably safe place in which to work. This, indeed, is the measure and limit of the duty of the master. Eagle Cotton Oil Company v. Pickett, 175 Miss. 577, 166 So. 764; Meridian Grain and Elevator Company v. Jones, 176 Miss. 764, 169 So. 771; Gulfport Fertilizer Company v. Bilbo, 178 Miss. 791, 174 So. 65; Aponaug Mfg. Company v. Hammond, 185 Miss. 198, 187 So. 227; Stewart v. Kroger Grocery, etc., Company, 198 Miss. 371, 21 So. (2d) 912, and many other cases which might be cited.

The burden was upon plaintiff to show failure to use such diligence. I don't think he did that. The facts are undisputed bearing upon that question. Appellant operated a gas station. Its pumps were twenty-one feet and seven inches from the south side of the highway. Plaintiff was required to work about the pumps, servicing automobiles with gas therefrom. He may have had the additional duty of performing some service about the salesroom, which was several feet farther from the public highway than the gas pumps. He had no duty to perform any service at or near the loose gravel which crept upon the paved highway as automobiles departed from the gas station. His nearest duty to the highway was to service cars at the gas pumps. Nothing else whatever was wrong with the place in which appellee had to work other than the small amount of gravel which crept upon the highway as automobiles passed from the station area upon the paved highway. It is common knowledge that along and beside the highways of Mississippi there are located hundreds of gas stations, the front areas of which are covered with gravel to the edge of the adjoining public highways. Necessarily, more or less gravel and dirt from such areas accumulate for two or three feet upon the highway as automobiles make their exits from the service stations. If, by virtue of that necessary

result, such stations are rendered unsafe places to work, then indeed the conduct of that business is a hazardous undertaking.

Again, I cannot conceive how the operator of such a station can be charged with notice that an employee, having the duties of this plaintiff, the performance of which did not require him to go nearer the highway than some fifteen feet, could anticipate that an injury might occur to him as a result of the accumulation of gravel upon the highway in the manner and quantity as here shown. It should be kept in mind that this case in nowise involved the duty of appellant to one traveling upon the public highway. The sole question is whether the master used reasonable care to furnish the servant a reasonably safe place in which to work.

McGehee, C. J., and Smith, J., concur in this dissent.