John Henry MILLS, Plaintiff,

v.

MEMPHIS SALES AND MANUFACTUR-
ING COMPANY and Charlie Wheeler,
Defendants.

ESTATE of Willis Murle ADAMS,
Plaintiff,

v.

MEMPHIS SALES AND MANUFACTUR-
ING COMPANY and Charlie Wheeler,
Defendants.

Nos. EC6388, EC6415.

United States District Court
N. D. Mississippi, E. D.
March 10, 1966.

William S. Lawson, Tupelo, Miss., for plaintiffs.

Mitchell, McNutt & Bush, Tupelo, Miss., for defendants.

CLAYTON, District Judge.

These are two diversity cases arising from a motor vehicle collision. One—a

death case (*Adams*) was filed here. The other (*Mills*)—a personal injury case, was filed in state court and removed to this court by defendant. They were consolidated and tried to a jury with verdicts for defendants upon which judgments were entered.

Plaintiffs' timely filed motions for new trial are now before the court for disposition on briefs of the parties.

The sole basis upon which a new trial is urged simply stated is that two patrolmen of the Mississippi Highway Safety Patrol who investigated the collision with which we are concerned a short time after the incident, were permitted to testify, at the instance of defendant, as to the location of the point of impact of the two vehicles which were involved in the collision. A summary of how this evidence came into the hearing is proper in order to present this issue in a proper light.

On plaintiffs' case in chief, one of the patrolmen was called to the stand as a witness for plaintiffs. He testified extensively on direct examination about the situation as it existed at the time of his arrival at the scene. Most of this testimony was entirely factual, i. e. location and position of the vehicles, width and condition of the highway, tracks, skid marks, and other similar aspects of the physical facts. Near the end of his direct examination by counsel for plaintiffs, he was questioned and answered, without objection, as follows:

Q. Insofar as you were able to determine, approximately, were you able to ascertain a point of impact from the physical evidence?

A. I did.

Q. Can you tell approximately how many feet this point was from the telephone pole that the plaintiffs' car struck?

A. 55 feet.

Just after asking this witness about the point of impact, plaintiffs' counsel handed him a blown up photograph purporting to show the point at which defendants' truck came to rest after the collision and asked if that in fact was where the vehicle did come to rest. The witness answered that it was.

Obviously, plaintiffs' counsel, as a part of his trial tactics, left open and unclarified, the relationship between the point of impact and the place where defendants' truck came to rest. The jury at this point probably were puzzled, as was the court.

When this witness was tendered to defendants for cross-examination, he was permitted to testify, over objection of plaintiffs, as to where this point of impact was located with respect to the sides of the highway, that is, with respect to the traffic lanes. In his answer, he placed the point of impact in the traffic lane which was proper for use by defendants' vehicle. On cross-examination he also clarified the relationship between the point of impact and the place at which defendants' vehicle came to rest.

After plaintiffs had rested on their case in chief, during the development of defendants' case, the other highway patrolman was called as a witness for defendants. In response to questions put by defendants' counsel on direct examination, this witness testified that the point of impact was exactly where the other patrolman had stated it was located—in the traffic lane proper for use of defendants' vehicle. *It is to be noted that this testimony came in without any objection by plaintiffs.* Although plaintiffs also assigned the admission of this testimony as grounds for a new trial, no argument was directed to this point in plaintiffs' brief.

 Both of these patrolmen were officers of long experience in the investigation of traffic cases and thus had knowledge more than that of the average man with respect to collisions such as the one which gave rise to these cases. If expert opinion evidence about the incidents comprising a collision such as this are admissible, these men could validly express such opinions.

 But, say plaintiffs, such opinion evidence is never admissible in the courts

of Mississippi. They rely on such cases as Billups Petroleum Co. v. Entrekin, 209 Miss. 302, 46 So.2d 781 (1950); Delta Chevrolet Co. v. Waid, 211 Miss. 256, 51 So.2d 443 (1951) and Hagan Storm Fence Co. of Miss. v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963).

Plaintiffs' reliance on these cases is misplaced here. *Billups* was not a point of impact case and there was no attempt to qualify the witness as an expert. In *Delta* the witness was asked to give his opinion on the basis of photographs as to whether a vehicle was running at an angle at the time of collision. He had made no examination at the scene, and the photographs were equally available to the jury. In *Hagan* the testimony was from an "accidentologist" whose testimony was based largely on photographs and not on observation at the site soon after the collision. Moreover, no Mississippi case has been cited and none has been found which conclusively holds that the expert opinion of a highway patrolman as to the point of impact which is based upon personal and timely observation at the place of the collision is inadmissible. The weight of modern authority is to the contrary. See 9C Blashfield Cyclopedia of Automobile Practice § 6316 (Supp.1964, at 122–124).

Plaintiffs also contend that the aforementioned evidence is not admissible under the doctrine of curative admissibility and cite 1 Wigmore Evidence § 15 (1940 Ed.) pp. 304–307, which states the rules which have been applied under that doctrine in this language:

> Does one inadmissibility justify or excuse another? If the one party offers inadmissible evidence which is received, may the opponent afterwards offer similar evidence whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible fact?

> If the opponent *duly objected* and was erroneously overruled in the first instance, he could not claim to present similar inadmissible evidence because his objection would (in theory) save him, on appeal, from any harm which

may accrue, and he needs no other protection.

But if he *did not object* and except, he has no such protection; and the question thus arises whether he can protect himself at the trial by retorting in kind.

On this subject three different rules are found competing for recognition in the different jurisdictions.

(1) The first is that *the admission of inadmissible evidence without objection by the opponent, does not justify the opponent in rebutting by other inadmissible facts:*

* * * (quoting from Phelps v. Hunt, 43 Conn. 194 (1875)) * * *

This rule is represented by some English authority and by a respectable number of American jurisdictions.

(2) At the other extreme is a rule which declares that, in general, precisely the contrary shall obtain, i. e., *the opponent may resort to similar inadmissible evidence:*

* * * (quoting from Tilton v. Beecher, II Abb.Rep. 789 (N.Y. 1875)) * * *

This rule has also ample authority, and is perhaps to be regarded as the orthodox English rule.

(3) A third form of rule, intermediate between the other two, is that the opponent may reply with similar evidence *whenever it is needed for removing any unfair prejudice which might otherwise have ensued from the original evidence,* but in no other case. (Emphasis in the original).

█ Even if it is accepted that the doctrine of curative admissibility is as stated in the quotation from Wigmore and even if it is further accepted that the third form of the rule is applicable in the courts of Mississippi and that the case of Crosby v. Keen, 200 Miss. 590, 28 So. 2d 322 (1946) so holds, that doctrine and that rule have no application here. With the first patrolman witness, defendants did not introduce other evidence which would tend to rebut the claimed inadmis-

sible evidence introduced by plaintiffs, but, instead, the cross-examination was directed to a clarification and an amplification of the exact same evidence which came into the case at plaintiffs' instance —the location of the point of impact. Moreover, Wigmore cites far more cases in support of the holding that the opposing party may resort to similar inadmissible evidence when the other party has introduced inadmissible evidence, than he cites to support either of the other two holdings or rules. More importantly, he explains and clarifies these rules at page 309 in the following way:

The source of these divergent views is apparent enough. By the Courts adopting the first rule [that similar evidence by the opposing party is inadmissible] the emphasis is placed upon the circumstance that the opponent did not in the first instance object; hence, his waiver of objection leaves him without ground for maintaining that the original evidence was a wrong which estops the original offeror from now objecting. By the Courts adopting the second rule, on the other hand, [that similar evidence is always admissible by the opponent party] the emphasis is placed upon the original party's voluntary action in offering the evidence, by which he virtually waived future objection to that class of facts. Both these circumstances of waiver are true; it is simply a question of relative emphasis; hence the contradictory views. But it may be noted that under the first rule, in almost all the cases, the counter-evidence had been rejected below, while under the second rule, in almost all the cases the counter-evidence had been admitted below; i. e. the Courts under both rules reached practically the same result in that they refused to disturb the ruling below. This points to the true rule, namely, that since each party is alike in the condition of "volenti non fit injuria", *neither can complain of a ruling either admitting or rejecting,* —a waiver being predicable of both. *The matter is thus left in the hands of the trial Court.* Modify this in certain cases by conceding to the opponent, as of right, to use the curative counter-evidence when a plain and unfair prejudice would otherwise have inured to him, and the rule will be sufficiently flexible.

(First emphasis in the original; second emphasis added.)

See also Bradley v. Adams Express Co., 89 F.2d 641 (6th Cir. 1937); Heald v. Milburn, 125 F.2d 8 (7th Cir. 1942).

■ This court must also take into account Rule 43(a), Federal Rules of Civil Procedure, which, in its basic concept, favors the reception of evidence rather than its exclusion. That Rule reads as follows:

In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

There are two striking applications of this rule in this circuit. See Monarch Insurance Co. of Ohio v. Spach, 281 F.2d 401 (5th Cir. 1960) and Dallas County v. Commercial Union Assurance Co., Ltd., 286 F.2d 388 (5th Cir. 1961).

■■ If "the matter is thus left in the hands of the trial court" as stated by Wigmore, this court must place great reliance upon its reaction at the time when plaintiffs' counsel objected when the first patrolman witness was being cross-examined. In overruling that objec-

tion, it was stated from the bench that the door had been opened when plaintiffs asked the witness on direct examination, as set out above, about the point of impact. Certainly this was proper, not only because of plaintiffs' examination of the witness on this precise point, but also because plaintiffs left the witness's view with respect to the exact location of the point of impact undeveloped and "hanging in the air" in such a way as to make it probably confusing to the jury and assuredly, if left in that attitude, prejudicial to defendants.

This view is, of course, buttressed by the fact that plaintiffs did not object when the second patrolman witness was examined by defendants' counsel about this same matter—location of the point of impact.

From what has been said, it follows that plaintiffs' motions for a new trial are not well taken and they should and will be overruled.