GILLESPIE, Presiding Justice.
Joseph L. Williams, a minor, sued Sullivan, Long & Hagerty, Inc., and its foreman, Luther Ayres, in the Circuit Court of Jackson County to recover damages for personal injuries sustained when a motor scooter being operated by the plaintiff struck a hole in a street known as Jones Road in Jackson County, Mississippi. The plaintiff’s theory of the case was that Sullivan, Long & Hagerty, Inc., hereinafter *619 known as Contractor, did certain construction work on Jones Road, and that, after the road was opened for general use by the public and while still under Contractor’s control, Contractor failed to exercise reasonable care to maintain it in a reasonably safe condition. The jury returned a verdict for the plaintiff in the amount of $23,000. Thereafter, the court sustained a motion for judgment notwithstanding the verdict and a judgment was entered by the court for defendants. Plaintiff appealed to this Court and assigned as error the action of the trial court in sustaining the defendants’ motion for judgment notwithstanding the verdict.
On or about December 12, 1963, the Contractor entered into a contract with the Jackson County Board of Supervisors to construct a water distribution and sewage collection improvement in the Bayou Ca-sotte area of Jackson County, Mississippi. The work performed by Contractor amounted to about $3,000,000 and involved various construction work including laying a water line and sewer line in Jones Road west of Highway 63. The engineering firm of Barth and Associates was employed by the Jackson County Board of Supervisors to have general supervision of the contract on behalf of the county. An engineer was kept on the job a portion of the time. The contract provided that payments would be made to the Contractor from time to time as parts of the work were completed. On September 8, 1965, Barth and Associates notified Contractor by letter to pave Jones Road; the sewer and water lines had already been laid, together with certain connecting lines to meters on the south side of Jones Road. The paving of Jones Road was sublet to a sub-contractor and paving was completed on September 20, 1965. When the paving was complete, Contractor had no further work to do on Jones Road and did not perform any other work on this road.
On November 17, 1965, the engineer measured up the work done on Jones Road for payment, all work on said road having been done to the satisfaction of Barth and Associates. Thereupon, contractor was paid for that work, less a ten percent re-tainage as provided by the contract.
After Jones Road was paved and prior to November 26, 1965, when the plaintiff was injured, the Jackson County Utilities, operated by Jackson County, cut three trenches across Jones Road to connect the water line, which had been laid by Contractor, to three houses which faced a road known as “Road X”. This road runs parallel to and north of Jones Road. Contractor performed no work on “Road X”. The trenches cut by Jackson County Utilities were backfilled with dirt and on November 26 one of the trenches had a hole about three to six inches deep and about eighteen inches wide in the travelled part of the road. The plaintiff, an eleven year old boy, rode up and down this road several times a day on his motor scooter. He had been riding over a hump created by the backfill dirt in one of these trenches so that it would make his motor scooter jump into the air. On the day he was injured he missed the hump and hit the hole. This caused him to lose control and resulted in serious personal injuries.
Shortly before the plaintiff was injured, a nearby resident, who daily drove over Jones Road, complained to the Jackson County Board' of Supervisors about the condition of the road. She was referred to Contractor. She then called Contractor’s office and a lady answered the phone. Information was given the lady who answered Contractor’s phone of the poor condition of the road. The evidence showed that Mr. Ayres, one of the defendants, and a foreman of the Contractor, knew that the road had been cut by the Jackson County Utilities. Neither Contractor nor Jackson County Utilities put up any warning signs of the ruts created by these trenches cut in the new pavement.
The contract between Jackson County and the Contractor contained among other things the following provisions:
After the construction work is completed, all refuse and debris resulting *620 from the work shall be cleaned up and disposed of to the satisfaction of the engineer, structures shall be washed or swept out and left neat and clear. Dirt and spots shall be removed from the equipment and all painted surfaces. All excess excavation, waste concrete, wiring, piping, lumber or other refuse shall be removed from the site of the work and site leveled, graded and dressed until it is neat, smooth and workmanlike. All work under this section shall be done by the contractor at his own expense.
‡ ‡ % ‡ ifc ‡
Any defective work may be rejected by the engineer at any time before the final acceptance of the work, even though the same may have been previously over looked [sic] and estimated for payment.
* * * ‡ * *
If the Contractor claims that any instructions by drawings or otherwise involve extra cost under this Contract, he shall give the engineer written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall be then as provided for changes in the work. No claim shall be valid unless so made.
Jjc íjí sjí í{í
The owner agrees to pay the Contractor 100% of the value of the work done each month, less thn [sic] percent (10%) retainage until final acceptance of the work had been made.
* * * * * *
* * * It is the intent of this Specification that the Contractor shall be responsible for all settlement of backfill in trenches occasioned by the work covered herein. He shall refill trenches as often as necessary to bring them back to original grade and during the period when settlement is occurring shall refill them frequently enough to maintain traffic without hazard at all times except when trenches are actually flooded.
* * * * * *
Wherever it becomes necessary in excavating to disturb special surfaces such as concrete, bituminous, or gravel drives, roadways, walks or parking areas, the original surface shall be restored after complete [sic] of the backfill.
i}c ‡ ‡ ‡ *
When the open trench method of installation is specifically permitted by the Engineers in writing, adequate falsework shall be provided to properly maintain traffic on the highway being crossed. When the open trench method is used, the Contractor shall pay all cost of false-work construction and of maintenance of road surface or roadbed resulting therefrom, whether incurred by the Contractor or by others.
******
All materials excavated shall be placed so as to interfere as little as possible with public vehicular traffic.
The completion of the contract was finally accepted by Barth and Associates on behalf of Jackson County Board of Supervisors on January 22, 1966. Prior to that time and after the plaintiff had been injured on November 26, 1965, the engineers for the county gave Contractor a list of requirements for the Contractor to do. Upon completion of these requirements the $300,000 retainage would be paid and the contract finally accepted. One of these requirements was the repaving of the holes cut in Jones Road by Jackson County Utilities. Contractor repaired these holes, which was a minor job. Contractor’s manager stated that he did it to satisfy the county and in order to get the final payment on the contract.
The principal question for our decision is whether there was more than a scintilla of evidence that the Contractor was responsible for the maintenance of Jones Road after Jones Road was measured up by Barth and *621 Associates on November 17, 1965, and accepted as a satisfactory completion of Contractor’s work on Jones Road.
In determining whether the trial court was in error in sustaining the motion for judgment notwithstanding the verdict, we view the evidence in the light most favorable to appellant, accept as true all evidence favorable to plaintiff together with all reasonable inferences the jury might draw therefrom, and disregard any contradictory proof. Hollie v. Sunflower Stores, Inc., 194 So.2d 217 (Miss.1967). Appellant argues that under the terms of the contract, Contractor had the duty to maintain Jones Road in a reasonably safe condition until final acceptance of all the work done under the contract; that Contractor failed in this regard and this failure resulted in injuries sustained by plaintiff. He cites and relies on Public Service Corporation v. Watts, 168 Miss. 235, 150 So. 192 (1933). The Watts case in our opinion is not applicable. In that case there was no question that the Public Service Corporation removed the brick surfacing from the street in order to lay its pipes under and across the streets. It thereafter failed to restore the street in as good condition as it was before the opening, as required by its contract with the city. In the present case, the Jackson County Utilities and not the Contractor cut the trenches across Jones Road, and we are of the opinion that Contractor was not responsible for the maintenance of said street after it had completed the paving sometime prior to appellant’s injury.
In Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1926), Sugg. of Error Overruled (1927), the excavation into which the plaintiff fell was dug across the sidewalk on a city street by a third party and with the knowledge of the city, who was responsible for the maintenance of the streets by the-use of reasonable care. The excavation was allowed to remain unguarded, resulting in the plaintiff’s injuries. We are also of the opinion that that case is not applicable.
After a careful consideration of the provisions of the contract and the testimony of the witnesses, we are of the opinion that Contractor had no further duty to maintain Jones Road, after the engineers, acting on behalf of Jackson County, accepted the Jones Road part of the contract and certified it for payment prior to the accident. The trenches were cut across the road by Jackson County Utilities and we are of the opinion that Jackson County Utilities was solely responsible for backfilling these trenches and maintaining them thereafter. The particular paragraphs of the contract quoted hereinabove have reference to work required of Contractor and in our opinion it was not contemplated that Contractor would be responsible for maintaining Jones Road after it had completed all of its work in satisfactory condition. Contractor’s knowledge that Jackson County Utilities had cut the trenches across Jones Road did not require the interference by the Contractor in that operation.
The action of Contractor in repairing the trenches after plaintiff’s injuries does not constitute substantial proof that Contractor was responsible for maintaining these trenches at the time the plaintiff was injured. The manager of Contractor explained the re-paving of these trenches was a minor item in a large list of requirements made by the county which Contractor had to perform before final acceptance of the job and payment of the $300,000 being retained by the county.
In our opinion the trial judge was correct in sustaining the motion for judgment notwithstanding the verdict and entering judgment for the defendants.
Affirmed.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.