**COLUMBIA LUMBER CO., Inc. v. AGOSTINO et al.**

**AGOSTINO et al. v. COLUMBIA LUMBER CO., Inc.**

No. 12393.

United States Court of Appeals, Ninth Circuit.

Oct. 9, 1950.

Faulkner, Banfield & Boochever and R. Boochever, all of Juneau, Alaska, for appellant Columbia Lumber Co.

Bailey E. Bell, Herman H. Ross, Anchorage, Alaska, for appellant Agostino and others.

Before HEALY, BONE and LINDLEY,* Circuit Judges.

* Circuit Judge, Seventh Circuit, sitting by special designation.

BONE, Circuit Judge.

Appellees, Agostino and Socha, plaintiffs below, in their second amended complaint alleged that on or about March 24, 1948 they sold to appellant, Columbia Lumber Company, Inc., defendant below, certain described property located in and around a logging camp consisting of camp buildings, timber rights and valuable equipment and supplies located near the mouth of Mosquito Creek on Prince William Sound in Alaska; that appellees gave possession of all of this property to appellant at its request; that appellant thereby became indebted to and obligated to pay appellees the reasonable value of the property, said value being $37,-412.00; that appellant used and retained the property and refused to pay any amount therefor. Appellees did not seek recovery for the above mentioned sum, their complaint demanding judgment for only $25,000.00.

In general, appellant denied the sale or taking possession of appellees' property, save and except brief possession of a bunk house, and two caterpillar tractors belonging to appellees which it removed to its nearby camp to make certain repairs thereon; alleged an oral contract (later reduced to writing by counsel for Agostino) for the sale and purchase of appellees' property, for the amount of $10,000, which contract was repudiated by appellees, denied that appellees had title to certain property claimed by them and pleaded a counterclaim for $2,000 which amount was alleged to be the value of labor and materials expended by appellant in repair of the two caterpillar tractors owned by appellees. It further alleged that if appellees had suffered any damage by appellant's "possession" then such damage should not exceed the reasonable rental value of the bunk house and of the two tractors during the time such property was retained by appellant.

Upon trial the jury rendered a verdict in favor of appellees in the amount of $14,092. The appeal is from the judgment entered on the jury's verdict.

■ During the oral argument counsel for appellees renewed a motion to dismiss the appeal which motion we had previously denied without opinion. Grounds for the motion are that the notice of appeal was not timely filed in the district court and that the record on appeal was filed in this court too late. The record shows that the judgment below was filed on July 22, 1949. The notice of appeal was filed on August 22, 1949, or 31 days after the entry of the judgment. However, since the preceding day (August 21, 1949) was a Sunday, the notice was timely filed. Fed.Rules Civ.Proc.Rules 6(a), 73(a), 28 U.S.C.A.; 28 U.S.C.A. § 2107. The other grounds stated in the motion to dismiss do not deprive this court of jurisdiction or defeat the validity of the appeal, Rule 73(a), and we find no prejudice to appellees sufficient to warrant the dismissal of the appeal. The record shows that appellant moved the trial court for an extension of time to file the record on appeal within 40 days from the date of filing the notice of appeal, although the trial judge did not rule on the motion until after the expiration of the 40 day limit prescribed by Rule 73(g). Therefore, the delay cannot properly or justly be charged to appellant. The motion to dismiss the appeal is denied.

■ Appellant's first contention is that the evidence does not support the verdict. We think that it does. On many points the evidence was in sharp conflict but the jury chose to accept as true the testimony and inferences arising therefrom which supported the contentions of appellees. In so doing it was merely exercising a historic function of juries. From the evidence and testimony before it the jury had a right to conclude that the following facts had been established as true.

Appellees, Bruno Agostino and Stanley Socha, were co-partners in a logging venture conducted under the name of Barry Arm Camp. For four years prior to March 1948 they had engaged in timber operations near the mouth of Mosquito Creek. At that time they had logged approximately 750,-000 board feet of lumber under permits from the United States Forest Service and still had 250,000 feet to log on their last permit. In the course of the logging venture they had built a saw mill, bunk house, cook house and garage, had constructed roads, and had cleared a tide water pond

near the mouth of the creek (the pond being used to store and raft the logs) and had sunk pilings and strung boom logs across the pond for this particular purpose. The land on which their camp was located was owned by the United States Government but appellees had the right of temporary possession under their timber permit. Appellees also had on the premises two caterpillar tractors, a donkey engine, and a miscellaneous assortment of logging tools and equipment suitable to appellees' operations.

During the latter part of March 1948, one Kenneth Lambert who was employed by appellant, approached the mouth of the creek in order to find out whether he could land logging equipment there, this because appellant had secured a permit for extensive timber cuttings in that area. Agostino objected to the landing claiming possessory rights but he offered to sell out to appellant for $25,000. Lambert returned to appellant's mill in Whittier and from there telephoned for instructions from Morgan, appellant's president and general manager in Juneau. Morgan told him to ignore Agostino and to move in appellant's equipment and start logging operations. About a week later Lambert, together with Rowell, the Whittier mill superintendent, returned to the creek and talked to Agostino who again refused to permit appellant's equipment to be landed unless appellant purchased his camp. Finally, on a third visit, Agostino permitted the landing after being shown a telegram from Morgan to Lambert and Rowell telling them to go ahead with the operations and that he (Morgan) would come up later and make a settlement with Agostino.

Lambert set up his camp on the opposite side of the pond from appellees and began preparation for logging on behalf of appellant. The creek and log pond were only large enough to be used by one logging outfit at a time.

On or about April 10, 1948, Morgan visited appellees' logging camp and talked to Agostino but was unable to reach an agreement. He promised to return two days later for further negotiations but did not do so. Meanwhile Agostino had given Lambert and his crew full possession of the pond and appellee's camp. However, Lambert did not use the saw mill, buildings, donkey engine or tractors, but did use the log pond, the roads and some of the smaller tools. When Lambert began logging the first logs he cut were those covered by appellees' permit.

During the latter part of June, 1948, further negotiations were carried on between Agostino and Morgan. The parties finally agreed on a price of $10,000 and Agostino's attorney drafted a written contract to that effect. This was signed by Agostino and forwarded to appellant. Morgan, however, before he would sign the contract, insisted upon a particularized inventory list of the property which was to be included in the sale. Agostino refused to furnish the list and the contract was, therefore, not consummated.

By this time appellant had made some use of appellees' buildings and tractors, in addition to the log pond and roads, and had logged off all of appellees' timber.

Under this state of facts we think the jury was entitled to believe and find that appellant took possession of appellees' property under an implied promise to pay a reasonable amount therefor. Appellant does not argue that the amount fixed by the jury exceeded the bounds of reason.[1]

---

1. At the conclusion of appellees' case appellant moved for a directed verdict basing its motion on several grounds. In denying appellant's motion the court made the following illuminating comment:

"The testimony of Mr. Agostino and Mr. Lambert is not entirely harmonious but in most respects it is substantially so and out of it all I am convinced that there is enough to go to the jury on a contract of purchase and sale for a reasonable price. It would be analogous to my going into a grocery store and buying a sack of flour and taking it away without saying anything about the price. I would be liable for the reasonable price.

"In this case there was a discussion into the price but the parties evidently didn't agree upon the price, but the Columbia Lumber Company did agree to take over the property and accepted possession of it and in that respect I am convinced that Mr. Lambert was their

██ We find no error in the court's instruction to the jury concerning possessory rights to the tidelands.[2] The evidence for appellees showed that their possession of the tide pond was rightful, that they had improved the pond by clearing it of stumps and debris and had driven pilings and placed boom logs in order to make effective use of the pond. They had used it for the past four years but were not able to use it in their operations while it was being used by appellant. Their possession of this log pond and camp was such as to enable them successfully to prevent appellant from landing therein and using the pond; the landing was finally permitted by Agostino only after he was assured that Morgan would come up and "settle with him." Even though the land was owned by the Government, appellees had a possessory right under their Government permit. They had established actual possession by making and maintaining such improvements on the land as the nature of the situation or the purpose for which it was to be used required. This evidence, which the jury apparently chose to believe, was sufficient to show, for practical purposes, appellees' possession of the entire pond. Columbia Salmon Co. v. Berg, 5 Alaska R. 538, 544.

 Appellant's next specification of error concerns the trial court's refusal to instruct the jury to the effect that Lambert was an independent contractor, and that therefore his actions would not bind appellant. We agree with appellees that it is immaterial whether Lambert was a servant of appellant or an independent contractor this for the reason that the actual taking possession of the log pond and the other property was done under express instructions from Morgan, appellant's general manager. When Lambert acted under such instructions from appellant his actions were the actions of appellant and would bind appellant regardless of Lambert's actual business status. In its intructions the court explained to the jury that if it found that Lambert was an independent contractor during the time or times pertinent to the inquiry then Lambert's actions would not bind appellant *unless* he had express authority to act for and on behalf of appellant. The legal status of an independent contractor was then clearly and properly explained to the jury and the jury was left free to determine from all the evidence in the case whether Lambert was, as a matter of fact, acting in this case as an agent of appellant or only in the capacity of an "independent contractor". Thus carefully narrowed, a simple fact question was presented which the jury had a right to resolve one way or another.

██ Appellant complains of the court's instruction to the jury that, "An oral contract for the sale of personal property may in law, if proved, be just as valid and enforceable as though it were written." Appellant contends that the al-

agent and having accepted possession of the property they are bound to pay the reasonable value thereof.

"Not only was Mr. Lambert their agent but this whole scheme was confirmed by Mr. Morgan when he came to the property on the 10th of April. He didn't then reject anything except the price of $25,000. He didn't tell his people to go away and not bother Mr. Agostino any more. He was quite willing to take everything that Agostino could give and take his chances on payment of it later in some fashion; get it as cheap as he can, which, I suppose, is legitimate business. But he cannot be permitted to get all the benefits that Agostino could give him and then walk away saying 'I am not bound to pay anything' and 'You will

have to look to some independent contractor or to the man in the moon for your pay' and 'It isn't worth anything.'"

(The court's instructions were rested upon the "reasonable value" theory referred to in this comment.)

2. The jury was instructed: "It should be noted that as respects tidelands, actual possession is necessary to establish superior right. Without actual possession all persons enjoy equal right to use thereof. Such actual possession is usually manifested by structural improvements or even by fences or posts or pilings. But exclusive uninterrupted and long continued possession and use for other purposes may give such superior right, provided there is real and actual possession."

leged oral contract was unenforceable under the provisions of the Territorial statute of frauds, Section 29-1-12, A.C.L.A. 1949.

In other portions of the instructions the jury was advised fully concerning the legal requisites of enforceability of oral contracts.[3] We think that the instructions, when considered as a whole, as we must consider them, Southern Pacific Co. v. Souza, 9 Cir., 179 F.2d 691, 695, were complete and free from reversible error. And from evidence which the jury might well believe that there was a complete and unconditional delivery of all of the property of appellees and an acceptance of a sufficient portion of the property such as to remove the bar of the statute of frauds (footnote 3).

■ Appellant next contends that the trial court erred in permitting appellees, over objection, to introduce evidence of the alleged oral agreement for the reason that such oral agreement was inconsistent with and contrary to the terms of a later executed written agreement, and therefore was inadmissible under the parol evidence rule. This specification is without merit for the reason that the written settlement offer proposed by Mr. Agostino was never unconditionally accepted by appellant and therefore did not ripen into a contract. Hence there was no room for application of the parol evidence rule. 3 Williston on Contracts (Rev.Ed.) Sec. 632.

■ The trial court permitted appellees, during the course of the trial, to amend their complaint to conform to the evidence which showed an implied contract to pay a reasonable price, rather than an express contract to purchase the property for the sum of $25,000 as originally alleged. We think that the allowance of this amendment was properly within the trial court's discretion under liberal rules of present day pleading, and we do not see that any prejudice resulted to appellant from the allowance of the amendment. Appellees did not ask to amend their prayer so as to seek recovery of a larger amount than $25,000 originally sought.

We have examined appellant's other specifications of error and find them without substantial merit. The instructions fairly state the applicable law covering these contentions.

■ Appellees have cross appealed seeking a larger attorney's fee than the $250 allowed by the trial court under the provisions of Section 55-11-51, A.C.L.A. 1949. We think that in this case the amount to be awarded as an attorney's fee was properly to be determined by the experienced trial judge and we cannot say that his allowance was an abuse of discretion. The wording of the above cited statute does not make the allowance of attorney's fees mandatory in this type of action and no reason exists for disturbing this award.

■ On their cross appeal appellees also seek to recover interest on the amount of the judgment from March 24, 1948. They have not cited us to any authority for the proposition that they are entitled to interest on such an unliquidated claim, and it does not appear that the Alaska statutory provision concerning the allowance of interest, Section 25-1-1, A.C.L.A. 1949, permits it.

The judgment is affirmed.

---

3. "The laws of Alaska concerning sales of personal property provide in part as follows: 'A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.' * * * Therefore, unless you find that on or about March 24, 1948, the defendant through its authorized agent or agents accepted part of the goods contracted to be sold and actually received the same, the plaintiffs are not entitled to recover in this action."