190 So.2d 830 (1966)
Hugo LEEB and Walter Pharo, Appellants,
v.
Geoffrey Steward READ, Underwriters at Lloyds, and Alliance Insurance Company et al., Appellees.
No. 65-847.
District Court of Appeal of Florida. Third District.
October 11, 1966.
Nicholson, Howard & Brawner, Miami, for appellants.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellees.
Before CARROLL and SWANN, JJ., and BOYER, TYRIE A., Associate Judge.
SWANN, Judge.
The plaintiffs had sought to recover under an insurance policy issued by the defendants, British insurance companies who do business as "Lloyds of London," for fire damages to an aircraft. The trial court, sitting without a jury, entered a final judgment for the defendants, and the plaintiffs now appeal.
The plaintiffs, Walter Pharo, a German attorney, and Hugo Leeb, one of his clients, engaged one Henry Warton as their agent to assist them in the acquisition of a large aircraft. It was their alleged intention to *831 convert it to use as a tourist attraction, restaurant, and night club in Spain.
Warton located a huge Lockheed Constitution, one of only two ever built and the largest transport to have been constructed at that time. He negotiated and consummated the purchase for $40,000, and made apparent preparations to ferry the aircraft to Spain.
In June of 1963 the plaintiffs procured $100,000 hull insurance on the aircraft through the defendant's agents, Parker and Company. The limits were raised to $182,000 in July, 1963. Shortly thereafter, while the aircraft was situated at the Opa Locka, Florida airport, loaded with some 6,000 gallons of fuel, it caught fire. Firemen seeking to gain access to the blaze were hampered by the fact that the plane was securely locked and severe damage alleged to be a constructive total loss resulted. It was later discovered that a man made hole had been drilled at a critical point in a fuel pipe inside the plane, allowing gasoline to spew out.
Lloyds denied liability and coverage, alleging, inter alia, material misrepresentations of fact, improper assignments of interest in the policy, and that the loss had been brought about by the intentional acts of the plaintiffs or their agents.
Much of the evidence and testimony is in conflict. The record does, however, disclose competent, substantial evidence which could warrant the conclusions that, inter alia: (1) Warton had failed to secure the necessary customs clearance for a flight to Spain; (2) Warton did not have a crew adequate to manage a flight on such a large plane; and (3) no one had been seen in the vicinity of the plane during the half hour which elapsed from the time Warton and his engineer had locked the plane until the fire was discovered.
The trial judge, sitting as trier of facts, made the following findings in his final judgment:
* * * * * *
"(1) The Court finds that the Plaintiffs themselves and their agent, made material misrepresentations to Parker and Company in procuring the original insurance coverage in the amount of $100,000.00, as to the value of the plane insured which was destroyed by fire, and which is the subject matter of this suit, and that the defendants relied upon such misrepresentations made to Parker & Company.
"(2) The Court finds there were material misrepresentations of the value of the plane referred to in the preceding paragraph of this judgment when the insurance was increased from $100,000.00 to $182,000.00, and that the Defendants relied upon such misrepresentations made to Parker & Company.
"(3) The Court finds that the Plaintiffs, through their agent probably procured or deliberately caused the plane which is described in the Complaint to be willfully and intentionally destroyed or damaged to such an extent that it was impractical to repair the same, for the purpose of collecting the insurance represented by the policy of insurance sued upon in this cause.
"(4) The Court finds that the proof of loss filed by the Plaintiffs, signed by Walter Pharo and Hank Warton, was false and known to be false by the parties in the following material matters:
"(a) The representation as made by Pharo and Warton as to the interests of the parties and as to the mortgage on the plane in favor of Hugo Leeb.
"(b) The value of the plane as stated in the proof of loss.
"(c) The probable origin and cause of the fire.
"(d) The representation in the proof of loss that the plane was a complete loss.
"(e) Warton had been acting as agent of the Plaintiffs and signed the *832 proof of loss, yet he had assigned any interest he had in the plane and the insurance proceeds, prior to the fire, and the assignment was not disclosed to the carrier, but a second assignment made after the fire was presented to the carrier assigning Warton's interest in the plane and the proceeds of the insurance without disclosure of the assignment made prior to the fire, which assignment (the first assignment dated June 28, 1963), referred to `the accident' or loss which took place on July 13, 1963, following the assignment.
"(5) The Court finds that the plane did not have a value of even $100,000.00 either as a fair value or market value, at the time of the fire, and that the Plaintiffs had not invested or obligated themselves to invest a sum equal to $100,000.00 at the time of the fire or prior thereto.
"(6) The Court finds that the corporation organized in Spain, the Rafani Corporation, was controlled by the Plaintiffs in this cause and their associates, and that the testimony with relation to the organization of the corporation for the purpose of operating a Club in the plane once it reached Barcelona, was a furtherance of the Plaintiffs' scheme to establish the value of the plane in excess of its true value, and in furtherance of a fraudulent scheme to collect the insurance sued upon in this cause, and was done by or controlled by plaintiffs in this cause.
"(7) While the investment in the plane (purchase price, improvements and salvage after fire) is not controlling, the Court finds that the engines and other portions of the plane were not damaged by the fire and could have been salvaged, and that there had been negotiations by Hank Warton for the sale of the engines alone for $32,000.00 upon delivery of the engines to Barcelona, and that the actual purchase price of the plane before labor and equipment applied to the plane for the purpose of ferrying it across the ocean was $40,000.00 less a $2,000.00 kick-back to Warton, and approximately $4,000.00 expended by the seller toward putting the plane in condition for ferrying to Spain.
"(8) The Court finds that to further the fraudulent scheme in this matter, the plaintiffs, through Hank Warton in whose name they registered the plane in the United States, made false representations to the Federal Government as to the purpose and intent of removing the plane from the territorial limits of the United States as represented by exhibits filed in this cause."
* * * * * *
"(10) The Court finds that the plaintiffs are not entitled to recover under the policy of insurance sued upon in this cause in view of the findings of fact heretofore made in this judgment, nor or (sic) the plaintiffs entitled to recover on any of the Memorandums, Covenants or other written evidence of insurance coverage put in evidence in this cause.
"(11) The Court finds that the Defendants have not waived their right to deny coverage or liability through election or estoppel through any act of omission or commission."
* * * * * *
On appeal, the plaintiffs claim that reversible error was committed in (1) allowing testimony into evidence over objection that plaintiffs' agent, Warton, refused to take a lie detector test; (2) allowing two deputy fire marshals to testify as to the cause of the fire; and (3) failing to hold that the defendants had, by their conduct, waived any defects in the application and issuance of the policies and were estopped to deny coverage.
Our Supreme Court has recognized the rule that errors as to the admission and rejection of evidence in a non-jury case are not necessarily grounds for reversal. This rule was enunciated in Prince v. Aucilla *833 River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931), wherein the court said:
* * * * * *
"Errors as to the admission and rejection of evidence have not been shown to have injuriously affected the rights of the complaining party, especially since the case was not tried before a jury, where irrelevant or immaterial testimony may sometimes be highly prejudicial to a fair consideration of the facts by untrained minds of jurors who might thereby be misled into rendering a verdict on testimony which should have little or no consideration as of evidentiary value.
"A judgment should not be reversed or new trial granted in any case for error in rulings upon the admission or rejection of evidence unless it shall appear to the court from a consideration of the entire case that such errors injuriously affect the substantial rights of the complaining party. Holmberg v. Hardee, 90 Fla. 787, 108 So. 211, 213; Germak v. F.E.C. Ry. Co., 95 Fla. 991, 117 So. 391."
* * * * * *
It is established in Florida that an appellate court is not warranted in disturbing the trial judge's findings in a non-jury law case unless they are clearly erroneous. Pokress v. Josephart, Fla.App. 1963, 152 So.2d 756. The lower court's findings are entitled to the weight of a jury verdict and will not be disturbed [on appeal] unless there is a total lack of substantial evidence to support the trial judge's findings. Richards v. Dodge, Fla.App. 1963, 150 So.2d 477.
The record on appeal contains sufficient substantial evidence to support the findings of the trial judge, and upon consideration of the entire case, we do not find that there were any errors made upon the admission or rejection of evidence that affect the substantial rights of the complaining party.
For these reasons the decision of the lower court is hereby
Affirmed.
It is so ordered.