STATE of Alaska, Appellant,

v.

E. Bradford PHILLIPS, Administrator of the Estate of Patricia Phillips, Deceased, and E. Bradford Phillips, individually, and as Father and Next Friend of Sheila Toi Phillips and Lester Syren, Appellees.

E. Bradford PHILLIPS, Administrator of the Estate of Patricia Phillips, Deceased, and E. Bradford Phillips, individually, and as Father and Next Frend of Sheila Toi Phillips, Cross-Appellants,

v.

STATE of Alaska, Jack Morrow, Claude Rogers, and Cosby Steen, Cross-Appellees.

Nos. 1117, 1124.

Supreme Court of Alaska.

June 5, 1970.

Charles Hagans, Hagans & Opland, Anchorage, for appellant, State of Alaska.

Thomas E. Curran, Jr., and John M. Savage, Savage, Curran, Johnson & Palmier, Anchorage, for appellees.

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ., and OCCHIPINTI, Superior Court Judge.

RABINOWITZ, Justice.

These appeals arise out of an automobile accident which occurred in December 1966, approximately five miles south of Anchorage on the Seward Highway. At 8:30 a. m. on December 23, 1966, decedent Patricia Phillips was driving towards Anchorage. With her in her 1965 Corvair Monza was her four-year old daughter.

As Mrs. Phillips was proceeding north, her vehicle went into a broad-side skid, approximately across from the Yucca Club, a highway bar located at the corner of Seward Highway and 79th Avenue. While in the broad-side, Mrs. Phillips' vehicle struck a pickup proceeding south on the opposite side of the road driven by plaintiff Lester Syren. Mrs. Phillips' vehicle was demolished, and both she and her daugher were ejected from the vehicle by the force of the impact. Mrs. Phillips suffered injuries which subsequently culminated in her death some 17 days later. Mr. Syren and the minor

child, Sheila Toi, also received serious injuries.[1]

Thereafter, E. Bradford Phillips, as administrator of the estate of his deceased wife, individually and as next friend of their daughter Sheila Toi Phillips, together with Lester Syren, sued the State of Alaska and three officials of the Department of Highways of the State of Alaska. After a lengthy trial without a jury, judgments were entered against the State of Alaska and cross-appellees in favor of Lester Syren, Sheila Toi Phillips, and E. Bradford Phillips individually, as administrator, and as next friend. This appeal and cross-appeal followed.

LIABILITY.

As to liability issues, the gist of the State of Alaska's appeal is that the trial judge erred in his findings of fact and conclusions of law in holding that the state was negligent, and further erred in deciding the issue of Patricia Phillips' contributory negligence in her favor. This court's scope of review of judge-tried cases has been previously delineated in Civil Rule 52(a) and numerous opinions.[2] It is now well established that our review is limited to a determination of whether the trial court's findings are clearly erroneous. A finding is not clearly erroneous unless from

a review of the entire record we are left with a "definite and firm conviction that a mistake has been made." [3]

The reason is that the trial judge, who has seen and heard the testimony, is in a better position to judge the credibility of witnesses and the weight to be attached to their testimony than an appellate court reviewing a printed record.[4]

We have also held that where the trial judge's findings are based on nondemeanor sources, such as documentary evidence, deposition testimony, or transcribed testimony, our scope of review is broader than under the clearly erroneous standard.[5]

In this case, appellant State of Alaska argues that we should employ a broader type of review than is exercised under the clearly erroneous criterion because of the presence of "substantial documentary and demonstrative evidence" in the record which renders the oral evidence pertaining to liability issues extremely doubtful.[6]

We do not believe that the record in the case at bar presents an appropriate instance for employment of a standard of review different from the clearly erroneous test. Adhering to our normal scope of review, we hold that the trial court's findings of fact concerning the state's negligence and decedent Patricia Phillips' lack of contributory negligence were not clearly

1. This text is taken from the trial judge's memorandum decision. Civ.R. 52(a) states in part that "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

2. Civ.R. 52(a) reads in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

3. Steward v. City of Anchorage, 391 P.2d 730, 731 (Alaska 1964).

4. Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 687 (Alaska 1968) (footnote omitted).

5. In Paskvan v. Mesich, 455 P.2d 229, 240 (Alaska 1969) (footnote omitted), we said:

None of these witnesses were seen or heard by the trial judge. They had testified only before the probate master and not at the hearing held by the superior court. The superior court judge had no greater opportunity than we to judge their credibility, since his only contacts with these witnesses was through the typed transcript of their testimony before the probate master. In this situation we are in as good a position as the trial judge to make a determination of fact based upon such testimony.

See also Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 688 (Alaska 1968); Pepsi Cola Bottling Co. v. New Hampshire Ins. Co., 407 P.2d 1009, 1014 (Alaska 1965).

6. Appellant cites Orvis v. Higgins, 180 F. 2d 537 (2d Cir. 1950), cert. denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed 595.

erroneous. We therefore affirm the trial court's conclusions of law based on these findings of fact.

In his memorandum decision, the trial judge said in part:

It is impossible to reconstruct exactly what happened to Mrs. Phillips' car, from the testimony, as to what caused it to go out of control, and into its fatal skid. However, from logical inferences to be drawn from the testimony, I must deduce that the skid was the product of the forces influencing the direction of travel of the vehicle, that is the tendency to drift off the paved portion, onto the shoulder, and the eroded pavement lip or rut described by the witnesses together with the icy conditions of the road on that morning. There was no showing that Mrs. Phillips knew, or should have known that this combination of factors should have been anticipated, and that defensive driving tactics employed. Without hearing her explanation of what happened, I am not, in the light of the evidence, prepared to assume contributory negligence on her part. The defense of contributory negligence, accordingly, has not been proven.

Appellant State of Alaska had the burden of proving by a preponderance of the evidence that Patricia Phillips was contributorily negligent.[7] Our study of the entire record shows that there is ample evidence to support the trial judge's findings of fact, and inferences from the evidence, regarding Patricia Phillips' alleged contributory negligence. Admittedly, the trial court's memorandum opinion contains several confusing references to the presumption of Patricia Phillips' due care, and the legal effect of her having left her lawful lane of traffic in violation of pertinent highway regulations. Viewed in isolation, the departure of decedent's vehicle from its lane of traffic constituted evidence of contributory negligence under Rogers v.

Dubiel,[8] so rendered inappropriate reliance on any presumption of due care. In the case at bar, however, there is ample evidence that antecedent negligence on the part of the State of Alaska caused Patricia Phillips' vehicle to leave its assigned lane of traffic. This same antecedent negligence, combined with the then icy condition of the Seward Highway, furnished substantial evidence of excuse for decedent's violation of applicable highway regulations, overcoming the inference of contributory negligence from violation of highway regulations.

We need not summarize the mass of relevant evidence pertaining to the primary issue of the State of Alaska's negligence and subsidiary issues of notice, standards of highway maintenance, and causation. It is sufficient to state that our study of the entire record disclosed that the state's negligence was shown by a preponderance of the evidence. In this regard, the trial judge found in part that at the location of the Phillips' accident

there was a wide, shallow rut of uneven varying depth on the east side of the highway, sufficient to cause a vehicle encountering it under certain circumstances to go out of control.

This rut is the same highway defect alluded to by the trial judge in his findings pertaining to contributory negligence. In regard to this rut, the record shows that the state allowed this condition to exist in one of the most heavily travelled sections of highway in the State of Alaska. The record also supports the trial court's findings that due to the physical characteristics of this section of the highway, a vehicle travelling in the direction of Anchorage would, given icy surface conditions, have a tendency to drift to the right and go off the paved portion of the highway and onto the shoulder. Once on the shoulder, the right wheels of the vehicle could become engaged in the rut causing the vehicle to go out of

7. Ridgeway v. North Star Terminal & Stevedoring Co., 378 P.2d 647 (Alaska 1963).

8. 373 P.2d 295 (Alaska 1962).

control. Review of the evidence in the case at bar also leads to the conclusion that the State of Alaska had prior notice of the dangerously defective condition of the Seward Highway in the location of Phillips' accident; that the state failed to undertake appropriate reasonable measures to alleviate existing dangerous conditions; that the state's failure in this regard constituted a breach of the duty of care it owed to decedent Patricia Phillips, Sheila Toi Phillips, and Lester Syren; and that this breach of duty was the proximate cause of the fatal accident. We therefore affirm the trial judge's resolution of liability issues.

■ Two other specifications of error relating to issues of liability remain. Appellant State of Alaska has specified as error the admission into evidence of testimony concerning a fatal accident which occurred on the Seward Highway one week prior to the Phillips' crash approximately one mile north of the site of the Phillips' accident. Appellant's position is that evidence of another accident is only relevant to show a dangerous or defective condition where the other accident took place under substantially similar conditions as the accident in question.[9]

In his memorandum decision, the trial judge referred to the other accident in the following manner:

An earlier fatal accident involving similar conditions about one mile north, a week earlier was not investigated to determine its cause. A Mrs. Vasconi was killed. No system of obtaining reports from State Troopers of the investigation of the cause of accidents caused by highway defects appeared to have been put into effect. * * *

In denying appellant's motion to strike evidence relating to this other fatal accident, the trial court ruled

the evidence thereof relevant as to standards of maintenance on the more heavily travelled portion of control section 113124, and as notice to the Department that such standards of maintenance were insufficient.

From the foregoing, it is apparent that the trial judge did not use evidence of the Vasconi accident in his determination of the cause of the Phillips' collision. We therefore find no merit in appellant's objections to evidence relating to this other accident. Such evidence bore relevance to the issue of appellant's standards of maintenance on the more heavily travelled portions of Control Section 113124 (the section of the road where the Vasconi and Phillips accidents took place), and had further relevance to the question of whether appellant had notice that its standards of maintenance were insufficient for this portion of Control Section 113124.

■ Appellant's remaining specification of error concerns opinion testimony of Alaska State Trooper Costlow. After the trial judge found him qualified, this witness was allowed to testify that in his opinion the Phillips' accident was caused by the rut alongside the pavement. Appellant claims the admission of the opinion of an investigating police officer, not an eyewitness, as to the cause of the Phillips accident was prejudicial error.[10] In a recent opinion concerning qualifications of expert witnesses, we said:

It is not necessary that the witness devote full time to the subject matter of his expertise; it is sufficient that he has the requisite intelligence and reasonable contact with the subject matter to allow him to demonstrate his expertise with reasonable skill.[11]

9. 2 Wigmore, Evidence §§ 442, 458.

10. Appellant relies on Billups Petroleum Co. v. Entrekin, 209 Miss. 302, 46 So.2d 781 (1950); Smith v. Clark, 411 Pa. 142, 190 A.2d 441, 443–444 (1963); Billington v. Schaal, 42 Wash.2d 878, 259 P.2d 634 (1953).

11. Lewis v. State, 469 P.2d 689 (Alaska, May 22, 1970). In City of Fairbanks v. Nesbett, 432 P.2d 607, 611–612 (Alaska 1967), we said:

The determination of the qualifications of an expert witness and the admission in evidence of opinion testimony

In addition to the necessity of determining an expert witness' qualifications, the trial judge must further determine whether the trier of fact could receive appreciable assistance from the opinion of the expert witness.[12] Greater liberality is accorded to the reception of opinion evidence in non-jury cases.[13] Guided by the foregoing rules, we hold that it was not prejudicial error for the trial judge to have admitted the opinion testimony of Officer Costlow.[14]

## DAMAGES.

 In the main appeal, the State of Alaska argues that the trial court erred in computing the dollar value of goods and services which ·decedent Patricia Phillips would have consumed over the remaining period of her life expectancy. The court employed the figure of $235 per month in its computation of this deductible item. Cross-appellants have conceded that this deductible item should have been computed at the rate of $345 per month for consumption of goods and services.[15] Upon remand, the trial court shall recompute this deductible item using the $345 per month figure.

 The crux of the cross-appeal is that the damages awarded were inadequate because the trial court "went outside evidence presented at trial." More particularly, it is contended that the court's findings were clearly erroneous because damages were not awarded for the following: increased services Patricia Phillips would have rendered to her husband's insurance business after their daughter had reached majority; for the expenses of a cleaning lady in addition to a housekeeper until Sheila Toi Phillips' majority, and for a housekeeper from such date until the death of E. Bradford Phillips; for services Patricia Phillips would have rendered to E. Bradford Phillips in furtherance of his political career.

Cross-appellee State of Alaska did not offer any evidence on the damages issues now specified as error in the cross-appeal. The evidentiary basis for the three disputed areas of damages is found primarily in the testimony of E. Bradford Phillips and of Philip Eden, an economist and statistician who qualified as an expert on damages.

Study of the entire record has led us to the conclusion that the damages awarded were neither excessive nor inadequate. Under Alaska's wrongful death statute, broad discretion is vested in the court or jury regarding damage awards. Under our act, the damages recoverable are limited "to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another."[16] In fixing the amount of damages, the court or jury is to

consider all the facts and circumstances and from them fix the award at such sum as will fairly compensate for the injury resulting from the death.[17]

are matters which lie within the sound discretion of the trial judge and such determinations are reviewable only for abuse of discretion.

12. This standard was first articulated in Crawford v. Rogers, 406 P.2d 189, 192 (Alaska 1965). It has since been followed in Maddocks v. Bennett, 456 P.2d 453, 454 (Alaska 1969), and West v. Administratix of Estate of Nershak, 440 P.2d 119, 121 (Alaska 1968).

13. In re Baxter's Estate, 16 Utah 2d 284, 399 P.2d 442 (1965); Leeb v. Read, 190 So.2d 830 (Fla.App.1960). ·

14. In regard to this witness' opinion testimony, the trial court indicated that he had

given [this] evidence only such weight as his limited experience at the time dictated, but I consider it of some weight, coupled with the evidence to corroborate it.

15. Given a life expectancy of 40 years, it appears that an arithmetical mistake was made in arriving at a total deduction of $86,244.

16. AS 13.20.340(b).

17. AS 13.20.340(c). AS 13.20.340(a) provides in part that damages shall be such as the court or jury may consider "fair and just." See also M. Ingraham, Damages for Wrongful Death in Alaska, 4 Alaska L.J. 113, 129, 145 (1966).

Upon consideration of the pertinent portions of the record, we are of the view that the trial court did not err in its award of damages for decedent's potential contributions to E. Bradford Phillips' insurance business, and for housekeeper-cleaning lady services. To a significant degree the evidentiary foundation for these two disputed damage subjects rests upon assumptions and projections embodied in the opinion testimony or cross-appellants' damage expert. The weight to be given to expert testimony is within the province of the trier of fact.[18] Given the broad mandate of AS 13.20.340(c), we affirm the trial court's award of damages for loss of Patricia Phillips' services to her husband's insurance business and for housekeeper-cleaning lady expenses.

We affirm the trial court's resolution of the damage issue pertaining to the political services Patricia Phillips would have rendered to E. Bradford Phillips. Study of the court's memorandum opinion has convinced us that the trial court included the value of these services in its award of $50,000 damages for loss of consortium.[19]

PREJUDGMENT INTEREST.

Cross-appellants' final specification of error is that the trial judge failed to award interest on the damages recovered from the date of decedent's death until the date of judgment.[20] Prior to 1965 the prevailing party in an action against the State of Alaska was entitled to interest "only from the date of judgment."[21] In the *Wright Truck* case,[22] decided in 1965, we said that the prohibition against prejudgment interest "can easily work an injustice on a party who has contracted with the state,"[23] and suggested to the legislature that it consider amending the statute. Two months later, the legislature acted on this suggestion, replacing "only from the date of judgment" with "from the date it [the amount found due from the state] became due."[24] The statute, AS 09.50.280, now reads:

If judgment is rendered for the plaintiff, it shall be for the legal amount found due from the state with legal interest from the date it became due and without punitive damages.

Whether cross-appellants are entitled to prejudgment interest turns on whether the damages awarded in the wrongful death action became "due" at the time of Patricia Phillips' death, or at the time judgment was entered. Alaska's general interest statute, AS 45.45.010, uses language similar to AS 09.50.280. In regard to the legal rate of interest, AS 45.45.010(a) provides in part: "The rate of interest in the state is six per cent per year and no more on (1) money after it is due * * *." Since AS 09.50.280 and AS 45.45.010(a) (1) delimit time

---

18. Merrill v. United Airlines, Inc., 177 F. Supp. 704, 705 (D.C.N.Y.1959). In our view, reliance on Rogge v. Weaver, 368 P. 2d 810, 815 (Alaska 1962), and Brown v. Northwest Airlines, Inc., 444 P.2d 529, 534–535 (Alaska 1968), is inappropriate. *Rogge's* admonition not to reject uncontradicted and unimpeached testimony unless inherently improbable is limited to determinations of Civ.R. 41(b) motions. The *Brown* decision involved workmen's compensation issues and in the opinion we alluded to the distinctive characteristics of workmen's compensation proceedings.

19. At one point in his decision, the trial judge stated:
 While I do not consider that the services of the wife of a political figure as separate and distinct from those of any person in business or professional life

that such services must be especially compensated, I do consider the loss of consortium an item of damages which has been clearly established by proof in this case.

20. In their brief, cross-appellants exclude damages for pain and suffering from those elements of damages they contend should carry interest from the date of Patricia Phillips' death. We are therefore not required to determine whether prejudgment interest should be awarded on this type of damage.

21. SLA 1962, ch. 101 § 26.04.

22. Wright Truck & Tractor Serv., Inc. v. State, 398 P.2d 216 (Alaska 1965).

23. *Id.* at 220.

24. SLA 1965, ch. 30 § 2.

periods during which interest runs in the same words, they are *in pari materia,* so "due" should receive the same construction in both statutes.[25]

In reaching the conclusion that cross-appellants are entitled to prejudgment interest on damages awarded in the wrongful death action from the time of Patricia Phillips' death, we find the legislature's 1965 amendment to AS 09.50.280 highly significant.

It appears that judicial precedent prior to 1965 had construed our general interest statute, AS 45.45.010, as allowing prejudgment interest only in those instances where the amounts claimed were liquidated.[26] We think the legislature's 1965 amendment to AS 09.50.280 evinces an intent that prejudgment interest be awarded more liberally than prior judicial interpretations of AS

45.45.010 would have called for. When the legislature determined that interest should run against the state from the time amounts were due rather than from the time of entry of judgment, it did not draw any liquidated-unliquidated distinctions such as were employed in previous decisions under AS 45.45.010. We believe this action on the legislature's part to be a manifestation of sound policy, for our own study of the problem has led us to the conclusion that the liquidated-unliquidated common law distinction lacks a persuasive rationale.

Courts in other jurisdictions and commentators have over the years been moving away from medieval religious notions that all interest was evil toward recognition by awarding prejudgment interest of the economic fact that money awarded for any reason is worth less the later it is received.[27]

---

25. 2 J. Sutherland, Statutes & Statutory Construction § 5201 (Horack ed., 3d ed. 1943).

26. Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 795 (Alaska 1962) (footnotes omitted), is somewhat unclear in regard to the liquidated-unliquidated claims distinction. There this court said:

The interest statute of Alaska provides that the rate of interest shall be six per cent per annum on all moneys after the same become due and upon money due upon the settlement of matured accounts from the day the balance is ascertained. In this case there was no due date fixed for the repayment of the several loans which Robinette claims he made to Chirikoff Corporation and it was not even determined until the trial of this case that Chirikoff Corporation and not someone else was liable to Robinette for the moneys he advanced. Under these circumstances it was error to allow interest on the loan claim for any time previous to the date of the judgment.

On the other hand, Columbia Lumber Co. v. Agostino, 13 Alaska 34, 184 F.2d 731, 736 (9th Cir. 1950), and Valentine v. Quackenbush, 239 F. 832, 835–836, 152 CCA 618 (9th Cir. 1917), do distinguish between liquidated and unliquidated claims under what is now AS 45.45.010.

27. C. McCormick, Handbook On the Law of Damages, 206–33 (1935); Developments in the Law—Damages, 61 Harv.

L.Rev. 113, 136–38 (1947); 15 Stan. L.Rev. 107 (1962); Prager v. New Jersey Fidelity & Plate Glass Ins. Co., 245 N.Y. 1, 156 N.E. 76 (1927) (Cardozo, J.); Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526, 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962).

The Harvard Law Review note contends that plaintiff actually suffers the loss of use of money rightfully his between accrual of his claim and judgment, so interest is a consequential injury. Denying interest on unliquidated damages erroneously subordinates plaintiff's interest in full compensation to a feeling that defendant should not be penalized for failing promptly to pay an uncertain amount.

The Stanford Law Review comment argues that during the time between accrual of the cause of action and judgment, plaintiff loses and defendant gains the use of the money determined to be owing, whether the amount is ascertainable or not; therefore, no distinction between liquidated and unliquidated claims is justified. Likewise, no distinction between pecuniary and non-pecuniary injuries is justified, for defendant has unjustly enjoyed the use of amount with which the law requires him to compensate plaintiff between accrual of the cause of action and judgment. Discretion of the jury in awarding interest is indefensible, because it must lead to irrational results; where prejudgment interest is

For a cause of action to accrue, one party must have breached a duty to the other, and the other must have been injured. At the moment the cause of action accrued, the injured party was entitled to be left whole and became immediately entitled to be made whole. Whenever any cause of action accrues, therefore, the amount later adjudicated as damages is immediately "due" in the sense of AS 09.50.280 and AS 45.45.010(a). All damages then, whether liquidated or unliquidated, pecuniary or nonpecuniary, should carry interest from the time the cause of action accrues, unless for some reason peculiar to an individual case such an award of interest would do an injustice. We believe this construction is in accord with the legislative intent manifested in its 1965 amendment to AS 09.50.280.[28]

The following hypothetical case illustrates the injustice of denying prejudgment interest. Suppose A inflicts precisely the same amount of damage of any type on B and C at the same moment, evaluated by juries as $1,000 each. If C wins his judgment a year later than B and does not get prejudgment interest for the year, C recovers less than B for the same injury; C has been deprived of the use value of $1,000 for one year while B has enjoyed the use value. Interest is the market, or in the case of the legal rate the legislative, evaluation of the use value of money. B

obviously has not gotten too much for he had a right to be made whole immediately upon being injured, and B and C should get the same amount for the same injury, so C must have gotten too little. Only by awarding prejudgment interest from the time the cause of action accrues, when a plaintiff is entitled to be made whole, can the sort of injustice which happened to C in the hypothetical case be avoided. We are also influenced by the policy consideration that failure to award prejudgment interest creates a substantial financial incentive for defendants to litigate even where liability is so clear and the jury award so predictable that they should settle.

In light of the foregoing, we affirm the trial court's determinations that the State of Alaska was negligent and decedent Patricia Phillips was not contributorily negligent. The case is remanded for recomputation of the value of the goods and services decedent Patricia Phillips would have consumed over the remaining period of her life expectancy. This deductible item is to be computed at the rate of $345 per month. The trial court is also directed to award interest on damages recovered in the wrongful death action from the date of Patricia Phillips' death until the date the amended judgment is entered. The trial court's resolution of all other damage issues in the case at bar is affirmed.

---

proper, it should be mandatory. The award of prejudgment interest generally is desirable as a policy matter because it encourages early settlement and discourages defendants from using the delay between injury and judgment to defeat a legitimate demand.

28. We think this construction is not inconsistent with Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967). There it was held that damages for loss of future earnings should not be discounted by an interest factor back to present value. *See* Leavitt v. Gillaspie, 443 P.2d 61, 69 (Alaska 1968). In *Beaulieu*, it was reasoned that the sum of future earnings

received today exceeded the value of the same money received in the future, but that this differential was offset by inflation and likely wage increase factors not taken into account in damage awards. In order to be made whole, we held that the plaintiff should receive the undiscounted value of his future earnings. *Beaulieu* recognized that monies received later are worth less. We do not believe *Beaulieu* has any application to the prejudgment interest problem in the case at bar because inflation and wage increases are not significant factors in the normal period between accrual of the cause of action and judgment.